Rafael **HERNANDEZ**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 10–89–131–CR.

Court of Appeals of Texas,
Waco.

April 4, 1991.

Carlos Correa, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Mary Lou Keel, Asst. Dist. Atty., Houston, for appellee.

Before THOMAS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

CUMMINGS, Justice.

A jury convicted Appellant of the delivery of marihuana weighing more than fifty pounds and less than 200 pounds. *See* TEX.HEALTH & SAFETY CODE ANN. § 481.120 (Vernon 1991). The jury also made an affirmative finding that he used a deadly weapon in the commission of the crime. Punishment was assessed at forty years in prison and a fine of $30,000. We will affirm.

Louis Flores, a member of the Houston Police Department narcotics division, was introduced to Juan and Maria Ceniceros by an informant. Flores wanted to negotiate a purchase of 100 pounds of marihuana from Ceniceros as part of an undercover investigation. After some preliminary arrangements, Ceniceros said he would be able to sell Flores fifty pounds of marihuana. Appellant, who was summoned to Ceniceros' house to complete the transaction, arrived and discussed the sale with Flores. Appellant then talked on the phone to someone and ten to fifteen minutes later three men arrived with the marihuana. Appellant left the house to meet the three men and soon came back carrying a box of marihuana. Two other bags of marihuana were carried in by another individual. After inspecting the marihuana, Flores signaled police who were monitoring the transaction by a "wire" worn by Flores. Police then raided the residence and arrested Appellant who was carrying a gun.

Appellant's first point questions whether there was sufficient evidence to prove that he delivered more than fifty pounds of marihuana. He argues that the evidence showed: (1) he only delivered a one-pound sample of marihuana; (2) the total amount of marihuana delivered by him was less than fifty pounds because marihuana may have been added from other sources of marihuana at the scene of the "bust"; (3) the marihuana was drier at the time of trial and therefore did not weigh fifty pounds; and (4) the marihuana confiscated at the scene did not weigh fifty pounds because the state did not exclude the possibility that some of the marihuana consisted of mature stalks or non-viable seeds.

Evidence is sufficient to support a conviction if, when viewing it in the light

most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Butler v. State*, 769 S.W.2d 234, 239 (Tex.Crim.App.1989).

The jury was instructed as follows:

"Delivery" means the actual or constructive transfer from one person to another of marihuana, whether or not there is an agency relationship. Constructive Transfer is the transfer of marihuana either belonging to an individual or under his direct or indirect control by some other person at the instance or direction of the individual accused of such constructive transfer. It also includes an offer to sell marihuana. Proof of an offer to sell must be corroborated by a person other than the offeree or by evidence other than a statement of the offeree.

■ Officer Flores testified that Appellant was "in charge," that he instructed someone over the phone to come to Ceniceros' house and that a vehicle soon arrived carrying the marihuana. Additionally, Officer Reyes testified that he weighed the marihuana while it was in plastic bags and that it weighted fifty-three pounds. The State's chemist also testified that the marihuana weighed "fifty point six pounds" at the time she analyzed it. This evidence was sufficient for the jury to find beyond a reasonable doubt that Appellant constructively delivered more than fifty pounds of marihuana. *See Pena v. State*, 776 S.W.2d 746, 748 (Tex.App.—Corpus Christi 1989, pet. ref'd).

■ Appellant's contention, that the evidence was insufficient because the State failed to prove the marihuana weighed more than fifty pounds at the time of trial, is not supported by any authority. The weight of the marihuana at the time the crime was committed determined Appellant's guilt, not its weight at trial. Moreover, Appellant's complaint, that the evidence was insufficient to prove that he delivered more than fifty pounds of marihuana because the State failed to exclude the possibility that some of the marihuana weighed was not mature stalks or non-viable seeds, misplaces the burden of proof.

*See* TEX.HEALTH & SAFETY CODE ANN. § 481.184(a) (Vernon 1991). He had the burden of establishing that the marihuana contained stalks or non-viable seeds. *See id; Elkins v. State*, 543 S.W.2d 648, 650 (Tex.Crim.App.1976). The evidence was sufficient to support the jury's finding that Appellant delivered more than fifty pounds of marihuana. We overrule the first point of error.

■ Next, Appellant complains that he was denied his constitutional right to counsel at his preliminary, initial-appearance hearing. *See* TEX.CODE CRIM.PROC. ANN. art 16.01 (Vernon Supp.1991). The preliminary initial appearance was a critical stage of the prosecution at which Appellant was entitled to but did not receive the assistance of counsel. *See Whittington v. State*, 781 S.W.2d 338, 341 (Tex.App.—Houston [14th Dist.] 1989, pet. ref'd). However, the subsequent grand jury indictment preempted the prior finding of probable cause at the preliminary initial-appearance hearing. *Id.* Additionally, after reviewing the record, we find beyond a reasonable doubt that the error did not contribute to Appellant's conviction or punishment. *See* TEX. R.APP.P. 81(b)(2). Point two is overruled.

■ Appellant's third complaint alleges error by the court in denying his *Batson* motion. *See Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Appellant had to "establish a prima facie case of purposeful discrimination in the selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at his trial." *Id.* 106 S.Ct. at 1723. A prima facie case is established by showing that: (1) the state has exercised peremptory challenges to remove venire members of a cognizable racial group; and (2) this fact and any other relevant circumstances raise an inference that the prosecutor's peremptory challenges excluded venire members on account of their race. *See Powers v. Ohio*, — U.S. —, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991); *Batson*, 106 S.Ct. 1712. Peremptory challenges constitute a selection practice which allows those who are of a mind to discriminate to do so. *Batson*, 106

S.Ct. at 1723. Once the accused has established a prima facie case, the burden then shifts to the state to give a neutral explanation for challenging the minority jurors. *Id.*

Appellant's *Batson* objection and argument were as follows:

[APPELLANT'S ATTORNEY]: Yes, the Defense, Your Honor, would urge the Court and would show to the Court and move the Court for a dismissal of the array of the panel the way it is, based upon the fact that this defendant is a member of an identifiable racial group. The State has exercised peremptory challenges for the purpose of excluding people based upon their race.

We would show to the Court of ten peremptory challenges that the prosecutor had, the prosecutor used quite a few of those peremptory challenges to exclude the defendant, excuse me, to exclude different members that we are showing to the Court, for example, that juror, prospective juror number four is black. He made no responses whatsoever at all that would warrant his exclusion from this jury panel. The State has exercised a peremptory challenge on him.

We would also show to the Court that juror number 19 is Hispanic and that he used his peremptory challenge on him. Juror number 22 is black, Your Honor. The State used it's peremptory challenge on them. Juror number 8 is also black. The State used it's peremptory challenge on that black juror.

THE COURT: Which other one?

[APPELLANT'S ATTORNEY]: Juror number 15, Your Honor, is also black. The State used another one of it's peremptory challenges on that juror. And juror number 31 is Hispanic. The State used another of his peremptory challenges to challenge that juror. We would show to the Court the only reason these people were excluded was in fact on the basis of race they are from a recognizable minority status.

We would ask the Court that none of those jurors indicated anything based upon the responses and based upon the questions of the State that they would be any different than any of the jurors that would be empaneled that the State did not use any of its peremptory strikes on. We ask the Court to dismiss the array of the jury panel or ask the prosecutor the reason for exercising those peremptory challenges based on the opposition or based on race.

[PROSECUTOR]: Judge, if I might, I ask the Court to take judicial knowledge of the makeup of the jury. There is one Vietnamese man, one black, one Hispanic, there are five women, that is a fair cross section. That none of the underwrote, none of the rationale for any of my strikes had anything to do with race, but perhaps mannerisms, or perhaps the way they answered the questions.

And also I would ask the Court to take judicial knowledge that the defendant in fact struck members of the Hispanic race.

THE COURT: We will develop that later procedurally or are we not able under the circumstances. I'm not that familiar with Batson. I haven't studied it completely. I want to make sure the burden that the defendant has is rather high proving purposeful discrimination and what I want to do is perhaps, you know, I don't want to hold [the veniremen] up any longer, but at the same time if we have to then we have to.

.　　.　　.　　.　　.

[APPELLANT'S ATTORNEY]: I also ask the Court to take judicial notice of the fact of those numbers I have given to the Court are, in fact, minorities.

THE COURT: But we need to get that on the record as to why, the rationale as to why.

.　　.　　.　　.　　.

THE COURT: Okay. [Mr. Prosecutor], your under oath here. Well, you haven't been sworn. Is there any request officially to be placed under oath?

[APPELLANT'S ATTORNEY]: No, Your Honor.

THE COURT: As an officer of the Court, [Mr. Prosecutor], the [Appellant] has presented representations to the

Court based upon the strikes that were submitted by the State that at least would intend to show that the strikes made by the State were made for reasons based on race, that is, in a sense he has identified three blacks and two Hispanics, number 4, 15, 19, 22, and 31 in numerical order. That's the one I picked up.

[APPELLANT'S ATTORNEY]: That's correct.

THE COURT: That are either blacks or Hispanics that were allegedly struck because of their race or Hispanic origin. The Court will take judicial notice of the fact of the members of the jury, the twelve that were selected, one is a Vietnamese, Mr. Bang. There is a Mr. Garcia, Hispanic. And there is a Mr. Melvin Reed, black, if I recall correctly.

And are there any other minorities that ended up on the jury other than—

[PROSECUTOR]: I don't think so.

THE COURT: Okay. So as to number 4.

[PROSECUTOR]: First of all, I would ask the Court to take judicial notice that number 4 is not Hispanic.

THE COURT: Number 4 is black. He's apparently basing his Batson claim on minority status.

[PROSECUTOR]: Rather than black versus a race, which is the understanding that I have after reading Batson, that Batson is based on.

THE COURT: Batson has been extended.

[APPELLANT'S ATTORNEY]: To a white person, but the [Appellant] does not have a right to claim that another different minority was excluded from the jury by virtue of Batson.

THE COURT: I think there may be and I may be wrong, but I think there is a case involving a white defendant who has standing, who was found to have standing to complain that blacks, minority, or others were racially excluded.

The burden here now shifts to you to prove or to satisfy the Court that you have a racially neutral explanation for the challenges that have been raised

here. As to first, number 4, William Gregory Johnson.

■ As indicated by the statement of facts, it is doubtful whether Appellant introduced evidence sufficient to prove a prima facie case that raised an inference that the prosecutor used peremptory challenges to exclude members of a cognizable racial group. *See Williams v. State*, 804 S.W.2d 95, 101 (Tex.Crim.App.1991). After a lengthy *Batson* objection the trial judge announced the burden had shifted to the State based upon the objection made by Appellant's attorney. However, comment by counsel is not considered evidence unless made under oath. *See Price v. State*, 726 S.W.2d 611, 613 (Tex.App.—Houston [14th Dist.] 1987, no pet.); *Prosper v. State*, 788 S.W.2d 625 (Tex.App.—Houston [14th Dist.] 1990, pet. ref'd).

■ Our process of review in *Batson* hearings was established by the Texas Court of Criminal Appeals in *Williams v. State*, and is as follows:

(1) Did the appellant at the *Batson* hearing *introduce sufficient evidence to establish a prima facie case* that the State has engaged in purposeful racial discrimination by the use of peremptory challenges?; (2) if so, has the prosecution come forward with a neutral explanation for challenging black jurors?; and (3) if the prosecution has sustained [its] *burden of production*, as specified, has the appellant continued to sustain his *burden of persuasion* in establishing purposeful racial discrimination by the State's use of peremptory challenges, thus rebutting any race neutral explanation given at the *Batson* hearing.

*Williams*, 804 S.W.2d at 101 (emphasis added).

However, assuming the burden of production did shift to the State, we will review the State's explanations. The questioning at the hearing was as follows:

THE COURT: ... As to first, number 4, William Gregory Johnson.

[PROSECUTOR]: Mr. Johnson, the Court will recall was dressed in blue jeans. He had a blue jean vest and T-

shirt underneath it and had an earring in his left ear. Based on that, I felt that he was in my mind inappropriate for this type of case.

THE COURT: Okay. Anything else based upon the responses given on the information sheet?

[PROSECUTOR]: No, sir. Based on his appearance.

THE COURT: Okay. The Court will take judicial notice and recognizing there was that individual seated in the number 4 position wearing a bright, at least some jacket with bright colors yellow, red, and it did stand out a little bit. And the Court—anything else, Mr. [Prosecutor]?

[PROSECUTOR]: Not as to that individual. As to Mr. Wilson LaDay.

THE COURT: That's number 19, sir, or 15.

[PROSECUTOR]: 15, I believe is next.

THE COURT: Wilson LaDay.

[APPELLANT'S ATTORNEY]: You may have missed juror number 8, who is also black.

THE COURT: 8. I didn't hear that one. Nathaniel Lewis is also black, seated in slot number 8.

[PROSECUTOR]: Mr. Lewis, quite definitively indicated that he had problems with the concept of reasonable doubt, that he thought that the reasonable doubt standard was one that is considerably less than my opinion of what it is. And based on that, I struck him.

[APPELLANT'S ATTORNEY]: As a basis for a defense challenge for cause or peremptory challenge, the fact that the prosecution's burden would be lower.

THE COURT: I didn't understand what you said.

[APPELLANT'S ATTORNEY]: He indicated that the reason he struck him was that the burden of proof of beyond a reasonable doubt would be less, is that what you said?

[PROSECUTOR]: He would hold the State to a higher burden.

[APPELLANT'S ATTORNEY]: I misunderstood you.

THE COURT: Okay. The next one is number 15.

[PROSECUTOR]: I can't remember. I have the word strike next to him in regards to his responses to me.

THE COURT: I'm trying to remember.

[PROSECUTOR]: I can't remember, but it was a definitive reason. I would have to Judge ask the court reporter to take a look at his responses to my questions, but at that moment I wrote strike on my list.

THE COURT: Is it your testimony it was done on the basis of a response that he made to you?

[PROSECUTOR]: Yes, sir. I can't enunciate that.

THE COURT: The record will have to speak for itself on that matter. Next. Number 19, a Hispanic male, Huerta.

[PROSECUTOR]: Mr. Huerta, if the Court will recall had a T-shirt, on the jury information form reflects that he has no employment, that he has no type of work indicated, he has no phone number, again.

THE COURT: For business phone.

[PROSECUTOR]: No business phone number. Again I had questions based upon his appearance and lack of community, apparent community ties and employment as to his viability as a juror.

[APPELLANT'S ATTORNEY]: And for the record no questions were asked by the prosecution of this juror. He was wearing a pull over top.

THE COURT: A what?

[APPELLANT'S ATTORNEY]: Pull over top.

[PROSECUTOR]: He was wearing a green T-shirt.

THE COURT: And the record does indicate that he lived in Harris County 24 years according to, at least, I'm assuming that means 24 years, it's blank as to years or months. And—but does show no employer, no business phone, not even a type of work, but his wife does work. Okay. Anything else?

[PROSECUTOR]: Who is next?

THE COURT: That's jumping from 19 to 22. Tonya Lavonne Douglas, black female.

[PROSECUTOR]: Yes, I recall her, Judge.

THE COURT: Age 28 years old. Husband works for Domino's, manager training.

[PROSECUTOR]: Again she has no employment, no business. Indicating she also has no children, by the way which was in fact a standard in my opinion on this case since this case does deal with guns and children being present, that was a considerable consideration in my opinion.

THE COURT: Are you saying there will be evidence during the trial of this case to show children to be in the area?

[PROSECUTOR]: Yes, of the guns.

THE COURT: Okay. That's obviously a consideration. Anything else? That's 22. Now jumping to 31. Ms. Garcia, Texas Commerce Bank.

[PROSECUTOR]: Yes, sir.

THE COURT: Is employed.

[PROSECUTOR]: Yes, sir. My considerations were on her age, and her appearance. This one being embarrassing to me because she was a very pretty girl and I struck her not by virtue of her race, but that she was a very pretty girl, being concerned that she might be attracted to defense counsel or his client and for those reasons—you wanted my reasons.

THE COURT: We want racially neutral reasons and I think—

[PROSECUTOR]: Those are my reasons.

THE COURT: You have offered racially neutral reasons. You mentioned the age of the prospective juror, what have you found in your experience about the reaction of the younger jurors in any type of criminal case?

[PROSECUTOR]: They tend to be, they tend to lack conservatism and they tend perhaps on [marihuana] case to be less conservative than those who are older.

For all of those reasons, and I ask the Court to again let the record speak for itself as to Mr. LaDay because I'm quite sure of questions that I asked him concerned me.

THE COURT: You also indicated I believe that [the Appellant's attorney] or through the [Appellant] through [Appellant's attorney] also perhaps struck some minorities.

[PROSECUTOR]: Yes, sir.

THE COURT: Do you have any specific reference to that fact based upon the records before the clerk here? Do you have the jury sheet, the [Appellant's] strikes. The [Appellant's] strikes. Okay. The [Appellant] struck 1, 2, 5, 13, 18, 24, 27, 29, 32, 35, 36.

▓▓▓▓ The existence of the following factors have been held to suggest that the state may have stricken a juror for racially based reasons:

1. The reason given for the peremptory challenge is not related to the facts of the case;

2. There was a lack of questioning to the challenged juror or a lack of meaningful questions;

3. Disparate treatment—persons with the same or similar characteristics as the challenged juror were not struck;

4. Disparate examination of members of the venire, i.e., questioning a challenged juror so as to evoke a certain response without asking the same question of other panel members; and

5. An explanation based on a group bias where the group trait is not shown to apply to the challenged juror specifically.

*Whitsey v. State*, 796 S.W.2d 707, 713–14 (Tex.Crim.App.1989). However, the "prosecutor's legitimate 'hunches' and past experience" is permissible "so long as racial discrimination is not the motive." *Keeton v. State*, 749 S.W.2d 861, 865 (Tex.Crim. App.1988). The trial "court is left with determining from the totality of the circumstances whether an articulated neutral explanation is but an excuse for improper discrimination." *Id.* This is because the trial judge is in a better position to observe the behavior and statements of the venire members and the attorneys. *Glenn v. State*, 754 S.W.2d 290, 292 (Tex.App.— Houston [1st Dist.] 1988, no pet.). And,

when reviewing the trial judge's decision we will employ the clearly erroneous standard. *See Whitsey,* 796 S.W.2d at 726 (on rehearing). "If there are two permissible views of the evidence, the fact-finder's choice between them cannot be clearly erroneous." *Id.* at 722. The court's ruling will be considered clearly erroneous when, although there is evidence to support it, we are left with the definite and firm conviction that a mistake has been committed based on the entire evidence. *Id.* at 721.

■ Because the judge did proceed and allow the State to testify and explain why it struck some minority venire members, we have these explanations of record. The first juror, juror 4, which Appellant alleges the State struck for discrimination purposes was a black male. The reasons given for the use of a peremptory strike were that the venireman was wearing an earring, dressed in blue jeans, blue jean vest and a T-shirt, therefore, being an inappropriate juror for this kind of case. Even if these reasons "are inadequate, unreasonable, arbitrary, capricious," and do not serve as non-racial reasons, the defense attorney has not filled the record with answers to necessary questions or material impeachment evidence; thus, we have no choice but to affirm the trial court's finding regarding juror 4. *See id.* at 737 (Teague, J., concurring). The second juror struck by the State, juror 8, had a problem with the burden of proof, a reasonable doubt. This reason offered by the State is a "clear and reasonably specific" explanation of "legitimate reasons" for using a peremptory challenge on juror 8. *See id.* at 713. Juror 15, a black male, is Wilson LaDay for whom the State could not recall its reasons for exercising a peremptory challenge. The State said they had "strike" written next to his name and that the voir dire examination on that venireman would have to speak for itself. The statement of facts reveals that Mr. LaDay was involved in student riots while in college and he related that he did not like the way the police handled the situation. This unpleasant experience with the police is a sufficient reason to exercise a peremptory challenge against Mr. LaDay and is a race neutral reason. The fourth juror, juror 19, is Hispanic and the State's explanation of its peremptory strike was sufficient because juror 19 was not employed, appeared to lack community ties and had worn only a T-shirt to court giving him a questionable appearance, all of which went to his viability as a juror. The fifth juror, juror 22, which the Appellant objects to being struck was a black female who had no children, a characteristic which was important to the State since guns were kept in the presence of children in this matter. This is a sufficient reason to exercise a peremptory strike and is race neutral. The final juror, juror 31, which Appellant objects to being struck was a Hispanic female. The State explained their strike of juror 31 was premised on her being a young and very pretty girl who might be attracted to Appellant or his counsel. We cannot say the finding of the trial court was clearly erroneous and the point is therefore overruled.

■ Appellant complains in points four and five that the court erred when it refused to grant a mistrial after the prosecutor used a prior conviction to impeach him without giving prior notice. He argues that the prejudicial effect of the attempted impeachment substantially outweighed its probative value. Appellant's complaint is based on the following questions by the prosecutor:

Q  Sir, have you ever been convicted of a felony offense or a misdemeanor offense involving moral turpitude or placed on felony adult probation, sir, in this state, any state, or the United States within the last ten years?

A  Yes, sir.

Q  For what?

A  Yes, sir.

Q  My next question, for what?

INTERPRETER: I'm sorry.

[APPELLANT'S ATTORNEY]: I object. I would like to approach the bench and move for a mistrial.

Appellant's attorney did not object in a timely fashion to the prosecutor's question. To preserve a complaint for review, a party

must have presented the trial court with a timely request, objection or motion. TEX. R.APP.P. 52(a); *Morelos v. State,* 772 S.W.2d 497, 507 (Tex.App.—Houston [14th Dist.] 1989, pet. ref'd). An objection is not timely unless it is made at the earliest possible moment. *Wiggins v. State,* 778 S.W.2d 877, 895 (Tex.App.—Dallas 1989, pet. ref'd). Points four and five are overruled.

■ Appellant complains in point six that the charge was fundamentally defective because it failed to authorize a conviction on the lesser-included offense of delivering fifty pounds or less of marihuana when the charge read less than fifty pounds. Appellant was indicted for the delivery of marihuana *in excess of fifty pounds* and not more than 200 pounds. *See* TEX.HEALTH & SAFETY CODE ANN. § 481.120(c),(d)(1) (Vernon 1991). The lesser-included offense of delivery of marihuana *in excess of five pounds and not more than fifty pounds* was included in the charge at Appellant's request. *See id.* at § 481.120(b)(5). Appellant made the following request:

THE COURT: I understand additionally to the draft we have here, you are requesting the second or rather the alternative offense of felony of the first degree of an amount *less than 50 pounds, but more than 5 pounds, is that correct, Mr. [Defense attorney]?*

[APPELLANT'S ATTORNEY]: *That's correct.*

THE COURT: Based upon the testimony that maybe it was less, et cetera, et cetera, based upon the weight or rather based upon the testimony, there was a little moisture and that could effect the weight.

[PROSECUTOR]: I have no objection, Judge.

THE COURT: Okay. Being no objections, that will be included. Anything else?

[APPELLANT'S ATTORNEY]: Yes, Your Honor, the Defense would ask for the inclusion into the proposed jury charge of a paragraph for the lesser included of possession of [marihuana], in

the amount with the lesser included offense of possession of [marihuana], in the amount of in *between 50 pounds or less, but more than 5 pounds.*

We would ask the Court to include that charge in the jury charge based upon the fact that Officer Flores testified before the Court and has been raised by the evidence that the defendant, Rafael Hernandez, went ahead and brought in a box containing four or five packets of [marihuana] baggies, I believe, and the chemist testified the total weight of that baggie was approximately 20 pounds.

So we would ask the Court that if the jury believes this man is not guilty of delivery as a party of over 50 pounds of [marihuana] or under 5 pounds of [marihuana], but over 5 pounds, a jury might believe that he's guilty of possession of [marihuana] in the amount of *less than 50 pounds but more than 5 pounds* based upon the evidence.

We would also ask the Court, of course, to instruct the jury the way we define possession under our laws.

(Emphasis added).

The requested instruction mentioned both "fifty pounds or less" and "less than fifty pounds." There is a clear distinction between the two because one includes the fiftieth pound and the other does not. Appellant requested the instruction both ways, inclusive and exclusive of the fiftieth pound. He cannot now complain of fundamental error as the instruction was submitted in one of the forms requested. *See Gutierrez v. State,* 659 S.W.2d 423, 424 (Tex.Crim.App.1983). Point six is overruled.

■ Appellant contends in point seven that the charge on guilt/innocence was fundamentally defective "for authorizing a conviction as a party on the basis of an attempt." In point eight, he argues that the charge was also fundamentally defective because it failed to authorize a conviction for an "attempt" when the law of attempt was utilized to secure a conviction.

The jury was properly instructed on the law of parties, the theory of criminal responsibility on which the State proceeded:

A person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids or *attempts to aid* the other person to commit the offense. Mere presence alone will not constitute one a party to an offense.

*See* TEX.PENAL CODE ANN. § 7.02(a)(2) (Vernon 1974) (emphasis added). Because the instruction included the phrase "attempts to aid," Appellant contends the court authorized his conviction for criminal attempt. Criminal attempt is an offense. *Id.* at § 15.01 (Vernon Supp.1991). The law of parties is a theory of criminal responsibility. Appellant was neither indicted, charged nor convicted of criminal attempt. He was convicted, instead, of the delivery of a controlled substance as a party to the offense rather than as a primary actor. Points seven and eight are overruled.

■ Appellant next complains that the statutes authorizing his punishment are vague and therefore unconstitutional. He argues that he could be convicted for a completed offense, regardless of whether his conduct amounted to a completed act or merely criminal attempt. Appellant also asserts that the statute governing criminal attempt and the statute governing the delivery of marihuana define the same offense but impose different penalties, thereby creating a vague statutory scheme. As in the two preceding points, Appellant apparently confuses the offense of criminal attempt, an offense, and the law of parties, a theory of criminal responsibility. Appellant's point is without merit and overruled.

■ Appellant's final complaint is about the State's closing argument:

[PROSECUTOR]: ... He doesn't know whether they are cops, so he only wants to deliver 50 on the first occasion. It's not the last time if, in fact, Louis Flores is not a cop. And it's not the first time.

[APPELLANT'S ATTORNEY]: I object to that, Your Honor. That is not a reasonable inference from the evidence and is completely outside the record. It's improper argument.

THE COURT: Overruled. The jury will be instructed that you remember what the evidence is. Counsel sometime seeks to make inferences of what the evidence that was introduced before you might reach or suggest and you remember that you're the exclusive judges of the facts and the evidence that came before you.

[PROSECUTOR]: Thank you, Your Honor. And it is not the last time.

[APPELLANT'S ATTORNEY]: Objection, Your Honor. That is completely outside the record and is an inflammatory and prejudicial argument.

THE COURT: Overruled, but please stay within the record.

Appellant claims the statement "it's not the last time" referred to extraneous marihuana transactions, was inflammatory and prejudicial.

The first argument is that the comment is outside the record. The evidence revealed that Appellant was interested and willing to enter into more "deals" with Officer Flores as long as "this deal" went smoothly. Thus, one could reasonably infer from the evidence that the transaction which resulted in Appellant's conviction would not have been "the last time" Appellant would have transacted business with Flores. Therefore, to argue that "it's not the last time" the two would have engaged in marihuana transactions was not error. Appellant's second contention, that the argument was inflammatory and prejudicial, is also without merit.

■ During closing argument the prosecutor stated that Appellant "is the kind of man that we need to make a little room for in the penitentiary for a very, very, very long time." Appellant's objection was sustained, the court instructed the jury to disregard the statement, and Appellant asked for a mistrial. Ordinarily, any injury from improper jury argument is cured by an instruction to disregard, unless the remark is so inflammatory that its prejudicial effect cannot reasonably be removed by such an admonishment. *McKay v. State,* 707 S.W.2d 23, 37 (Tex.Crim.App.

1985). Any error was cured by the court's instruction.

■ Appellant also complains about the following argument by the prosecutor:

[PROSECUTOR]: Thank you, Your Honor. That's $30,000.00 worth of dope. That's $64,000.00 worth of dope on the street. If Louis Flores is not a cop, if morality of the issue of [marihuana] is something that is immaterial in this case. It's impacted, however, is undeniable.

And once it leaves the hand of Mr. Hernandez, it's victims [are] unfindable, unidentifiable.

Appellant contends that the prosecutor's statement regarding the "unidentifiable and unfindable" victims of the marihuana Appellant sold was improper because it was outside the record. Any error, assuming such occurred, would have been harmless beyond a reasonable doubt. We overrule Appellant's last four points of error and affirm the judgment.