# NO. 12-07-00394-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *SHEDRIC MOSLEY,* *APPELLANT* | § | *APPEAL FROM THE 241ST* |
| *V.* | § | *JUDICIAL DISTRICT COURT OF* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *SMITH COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Shedric Mosley appeals from his conviction for assault on a public servant, a third degree felony. After finding him guilty, the jury assessed punishment at five years of imprisonment. In three issues, Appellant claims that the trial court erred in denying his ***Batson***[1] motion and in allowing evidence of extraneous offenses, and that the evidence is legally and factually insufficient to support the conviction. We affirm.

### BACKGROUND

On September 14, 2006, while he was on duty in Smith County, Texas, Trooper Barry Goines observed a pickup truck speeding and initiated a traffic stop. Appellant was a passenger in the pickup. Although the driver of the pickup initially complied with the stop by pulling to the side of the road, he sped away once Trooper Goines exited his vehicle. Trooper Goines then initiated a vehicle chase that lasted several miles.

The driver eventually stopped the pickup again. This time, the driver exited the vehicle and

---

[1] ***Batson v. Kentucky***, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986).

ran away.  The passenger, Appellant, exited the vehicle and ran in another direction.  Appellant ran near the home of Christine Tennison, an octogenarian who resided in the area.  Ms. Tennison had witnessed a portion of the vehicle chase, and she talked to Appellant to see what was happening.  Trooper Goines continued patrolling the area until he located Ms. Tennison, who indicated that Appellant might be one of the individuals for whom Trooper Goines was searching.  Trooper Goines then attempted to arrest Appellant, but Appellant resisted.  As a result of his actions during the incident, Appellant was charged with assault on a public servant.  The matter proceeded to a jury trial.

After voir dire examination, the State used its peremptory strikes to strike the two African Americans who could have served on the jury.  Appellant, who is African American, made a **_Batson_** motion complaining of the State's strikes.  After an evidentiary hearing, the trial court denied the motion.  At trial, the State presented uncontroverted testimony that Appellant resisted the arrest.  However, the details of his actions were disputed.  According to Trooper Goines, Appellant swung at him three times, made contact with two of the swings, rammed him with his shoulder, and then ran from him.  Trooper Goines then tackled Appellant and shot his gun once after Appellant kicked and elbowed him.  According to Ms. Tennison, Appellant ran away from Trooper Goines, and in response, Trooper Goines shot his gun twice.  After the second shot, Appellant fell down, and Trooper Goines arrested Appellant.  Ms. Tennison did not see Appellant hit, ram, kick, or elbow Trooper Goines.  Ms. Tennison admitted that she turned her back to Trooper Goines and Appellant to walk back to her house.  However, she said she turned back around when she heard running, but said she did not see any fighting.  The jury found Appellant guilty and sentenced him to five years of imprisonment.  This appeal followed.

### _BATSON_ MOTION

In his first issue, Appellant contends that the trial court erred in denying his **_Batson_** motion.  Specifically, Appellant alleges that the State engaged in purposeful discrimination when it used its peremptory challenges to excuse the two remaining African American individuals from the venire.

**Applicable Law**

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution

2

forbids a prosecutor from challenging potential jurors solely on the basis of their race. U.S. CONST. amend. XIV; **Batson**, 476 U.S. at 89, 106 S. Ct. at 1719. A trial court follows a three step process to evaluate a claim that a litigant has made a peremptory strike based on race. **Snyder v. Louisiana**, _ U.S. _, 128 S. Ct. 1203, 1207, 170 L. Ed. 2d 175 (2008). First, a defendant who makes a **Batson** challenge must make a prima facie showing that the prosecutor has used a peremptory challenge to remove a potential juror on account of race. **Snyder**, 128 S. Ct. at 1207; **Purkett v. Elem**, 514 U.S. 765, 767, 115 S. Ct. 1769, 1770, 131 L. Ed. 2d 834 (1995). A defendant may establish a prima facie case solely on evidence concerning the prosecutor's exercise of peremptory challenges at trial. **Batson**, 476 U.S. at 96, 106 S. Ct. at 1723. He must also show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race. **Id.**

Once the defendant has made a prima facie showing, the burden shifts to the State to come forward with a race neutral explanation for challenging the jurors. **Snyder**, 128 S. Ct. at 1207; **Batson**, 476 U.S. at 97-98, 106 S. Ct. 1723-24. If the State offers race neutral reasons for the strikes, the defendant is given the opportunity to rebut those explanations. **Shuffield v. State**, 189 S.W.3d 782, 785 (Tex. Crim. App. 2006). The defendant has the burden to prove purposeful discrimination. **Id.** The defendant must attack the prosecutor's race neutral reasons as being contrived or pretextual to conceal racially discriminatory intent. **Jasper v. State**, 61 S.W.3d 413, 421 (Tex. Crim. App. 2001). The credibility of the prosecutor's reasons for disparate striking of jurors can be measured by "the prosecutor's demeanor; by how reasonable, or how improbable, the explanations are; and by whether the proffered rationale has some basis in accepted trial strategy." **Miller–El v. Cockrell**, 537 U.S. 322, 339, 123 S. Ct. 1029, 1040, 154 L. Ed. 2d 931 (2003).

We will disturb a trial court's ruling on a **Batson** motion only if it is "clearly erroneous." **Snyder**, 128 S. Ct. at 1207; **Guzman v. State**, 85 S.W.3d 242, 254 (Tex. Crim. App. 2002). Generally, a fact finder's decision is clearly erroneous when it leaves an appellate court with a "definite and firm conviction that a mistake has been committed." **Guzman**, 85 S.W.3d at 254. The clearly erroneous standard is an especially rigorous one where the findings are based primarily on oral testimony and the trial judge has viewed the demeanor of the witnesses. **United States v. Fernandez**, 887 F.2d 564, 567 (5th Cir. 1989); *see also* **Alexander v. State**, 866 S.W.2d 1, 8 (Tex.

Crim. App. 1993).

We review the evidence in the light most favorable to the trial court's ruling and afford great deference to that ruling. *Jasper*, 61 S.W.3d at 422. Furthermore, a claim that the proffered race neutral reasons for strikes are pretextual presents a question of fact, not law, and the trial court is in the best position to evaluate such claims. *Watkins v. State*, 245 S.W.3d 444, 447 (Tex. Crim. App. 2008), *petition for cert. filed*, (U.S. May 13, 2008) (No. 07-11037); *Gibson v. State*, 144 S.W.3d 530, 534 (Tex. Crim. App. 2004). The ultimate plausibility of a race neutral explanation is to be considered in the context of whether the defendant has satisfied his burden that the strike was the product of the prosecutor's purposeful discrimination. *Watkins*, 245 S.W.3d at 447.

## Analysis

At trial, Appellant objected that the State had struck the two African American members of the prospective jury panel, Jurors 28 and 32. The State responded that it had legitimate, race neutral reasons for the strikes. To explain its strike of Juror 28, the State argued that he knew Appellant's counsel, knew an employee of the Smith County District Attorney's office, had a family member with some health problems, and had unfavorable community ties. The trial court found that the State's reasons were race neutral, specifically mentioning the State's reasons that Juror 28 knew Appellant's counsel and Juror 28's wife had health problems.

We cannot determine from the record what was unfavorable about Juror 28's community ties. The State provided scant information regarding this reason, stating, "And in addition to that, that goes to community ties as a whole, which goes to Yarborough versus State." Other courts have previously held that a lack of community ties is a legitimate, race neutral reason for a strike, *see Hernandez v. State*, 808 S.W.2d 536, 544 (Tex. App.–Waco 1991, no pet.), but the record does not support that Juror 28 lacked community ties. We also cannot determine from the record why the State argued that Juror 28's acquaintance with an employee of the Smith County District Attorney's office was a bad characteristic. Consequently, if these two reasons had been the State's only reasons for striking Juror 28, Appellant could make a strong argument that the State's reasons were pretextual. However, Juror 28 also had met Appellant's counsel several times and had a wife with significant health problems. The trial court's decision that these reasons were race neutral and not pretextual has support in the record.

4

To explain its strike of Juror 32, the State argued that she had unfavorable community ties, had a maiden name that was shared by a well known family that included several convicts, and had served on a jury in a criminal trial that resulted in a hung jury. The trial court found that the latter two reasons were race neutral.

Again, the State's reason regarding community ties is difficult to understand from the record. When explaining this basis to the trial court, the State claimed, "That was another basis, as well as the community ties to the Chapel Hill area where multiple individuals have been prosecuted." Further, as was the case with Juror 28, the record does not support that Juror 32 lacked community ties. We are troubled by the State's reason regarding Juror 32's maiden name. Specifically, the State asked the veniremen if any had a friend or family member that was ever accused of a crime. Juror 32 did not respond to that question. Thus, her membership in this supposedly infamous clan is not supported by the record. The State never specifically asked Juror 32 about her relatives, and thus, Appellant's argument that this reason was pretextual has some support in the record. Again though, we do not analyze a *Batson* challenge in a vacuum. The trial court could have found that the State was merely mistaken about the identity of Juror 32's family, rather than purposefully discriminatory.

Further, Juror 32 had served on a jury that failed to return a verdict. When asked during Appellant's voir dire examination about prior jury service, Juror 32 stated that she had served on a jury in Smith County for a criminal trial. When further asked whether the jury had reached a verdict, Juror 32 responded that "[i]t was unable to resolve." Because this line of questioning occurred during Appellant's voir dire examination, the State did not have the opportunity to follow up with any questions of its own. A reasonable conclusion from the above exchange is that Juror 32 was involved in a criminal jury trial that resulted in a hung jury. A bad record during previous jury service is a race neutral reason. *Bausley v. State*, 997 S.W.2d 313, 316 (Tex. App.–Dallas 1999, pet. ref'd). The trial court's determination that this reason was race neutral and not pretextual has support in the record.

Having reviewed the entire record, we conclude the trial court's decision to deny Appellant's *Batson* motion was not clearly erroneous. Even though a prima facie case of racial discrimination was established, the State provided race neutral explanations for its use of peremptory challenges, and Appellant failed to carry his burden of persuasion that the stated reasons were pretextual.

5

Appellant has not argued that any jurors who provided similar responses to those of Juror 28 or Juror 32, but were not African American, were not struck by the State, and our review of the record has not shown this to be the case. Giving, as we must, deference to the trial court's ruling, we do not have a "definite and firm conviction that a mistake has been committed." *Guzman*, 85 S.W.3d at 254; *Bausley*, 997 S.W.2d at 316. We overrule Appellant's first issue.

**EXTRANEOUS OFFENSES**

As part of his second and third issues, Appellant argues that the trial court erred in allowing evidence of extraneous offenses. Appellant claims that such evidence was inadmissible based on Texas Rule of Evidence 404(b). Specifically, Appellant argues that the trial court should not have admitted evidence that "Appellant was convicted of possession of marihuana, resisting arrest and fleeing."

**Standard of Review**

A trial court's decision to admit or exclude evidence is reviewed under an abuse of discretion standard. *Rodriguez v. State*, 203 S.W.3d 837, 841 (Tex. Crim. App. 2006). The trial court is in the best position to decide questions of admissibility, and we will uphold a trial court's decision to admit or exclude evidence if it is "within the zone of reasonable disagreement." *Id*. A determination is beyond the zone of reasonable disagreement if by no reasonable perception of common experience could it be concluded that the proffered evidence had a tendency to make the existence of a fact of consequence more or less probable than it would be otherwise. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g).

**Applicable Law**

Rule 404(b) of the Texas Rules of Evidence provides in pertinent part as follows:

> Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

TEX. R. EVID. 404(b). Further, evidence of extraneous offenses may be admissible if it is same transaction contextual evidence. *Camacho v. State*, 864 S.W.2d 524, 532 (Tex. Crim. App. 1993).

Same transaction contextual evidence provides the jury with essential information to understand the context and circumstances of the conduct at issue, and thus, is admissible to "illuminate the nature of the crime alleged." *Id.* However, same transaction contextual evidence is admissible "only to the extent that it is necessary to the jury's understanding of the offense." *McDonald v. State*, 179 S.W.3d 571, 577 (Tex. Crim. App. 2005).

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. TEX. R. EVID. 401. Evidence that is not relevant is inadmissible. TEX. R. EVID. 402. The court of criminal appeals has explained the relevancy inquiry necessary under Rule 404(b) as follows:

> Under *Montgomery*, then, it appears that "fact of consequence" includes either an elemental fact or an evidentiary fact from which an elemental fact can be inferred. An evidentiary fact that stands wholly unconnected to an elemental fact, however, is not a "fact of consequence." A court that articulates the relevancy of evidence to an evidentiary fact but does not, in any way, draw the inference to an elemental fact has not completed the necessary relevancy inquiry because it has not shown how the evidence makes a "fact of consequence" in the case more or less likely.

*Rankin v. State*, 974 S.W.2d 707, 710 (Tex. Crim. App. 1996).

**Application**

When describing Appellant's conduct toward Trooper Goines, the jury heard that Appellant fled from Trooper Goines and resisted the trooper's attempts to arrest him. Further, the trial court admitted evidence that Appellant had marijuana in his possession when Trooper Goines attempted to arrest him. While legally separate offenses, these events are interwoven. This evidence provides information to the jury that is essential to understanding the context of the offense of assault on a public servant. *See Camacho*, 864 S.W.2d at 532. Moreover, this evidence of the circumstances of the assault is essential because it tends to prove the allegations in the indictment. Based on Appellant's aversion to arrest, the jury could have inferred the requisite intent to cause bodily injury to Trooper Goines. Thus, these extraneous offenses are same transaction contextual evidence, relevant, and properly admitted by the trial court. *See id.*

Additionally, we note that Appellant's counsel also asked Trooper Goines what charges were filed against Appellant as a result of Appellant's actions on September 14, 2006. Trooper Goines

7

responded that he charged Appellant with resisting arrest, assaulting a public servant, fleeing from a police officer, and possession of marijuana. Thus, even if evidence of these three extraneous offenses was not admissible, any error is harmless. *Leday v. State*, 983 S.W.2d 713, 717 (Tex. Crim. App. 1998)(When same facts are shown by other evidence that is not challenged, the improper admission of evidence does not constitute reversible error.). Therefore, we overrule the portion of Appellant's second and third issues that relates to admission of extraneous offense evidence.

SUFFICIENCY OF THE EVIDENCE

Appellant also argues in his second and third issues, respectively, that the evidence is legally and factually insufficient to support the verdict. Appellant asserts there is no evidence, or alternatively, factually insufficient evidence, that he knew Trooper Goines was investigating criminal activity, and thus lawfully discharging an official duty at the time of the alleged assault.

**Standard of Review**

The due process guarantee of the Fourteenth Amendment requires that a conviction be supported by legally sufficient evidence. *See Jackson v. Virginia*, 443 U.S. 307, 315–16, 99 S. Ct. 2781, 2786–87, 61 L. Ed. 2d 560 (1979); *Ross v. State*, 133 S.W.3d 618, 620 (Tex. Crim. App. 2004); *Willis v. State*, 192 S.W.3d 585, 592 (Tex. App.–Tyler 2006, pet. ref'd). Evidence is not legally sufficient if, when viewing the evidence in a light most favorable to the verdict, we conclude that no rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *see also Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993).

We review the factual sufficiency of the evidence without the light most favorable to the verdict, and we determine whether, considering all the evidence in a neutral light, (1) the evidence supporting the conviction is too weak to withstand scrutiny, so the fact finder's determination is clearly wrong and manifestly unjust, or (2) the great weight and preponderance of the evidence contradicts the jury's verdict to the extent that the verdict is clearly wrong and manifestly unjust. *See Grotti v. State*, No. PD-134-07, 2008 Tex. Crim. App. LEXIS 761, at *23 (Tex. Crim. App. June 25, 2008); *Watson v. State*, 204 S.W.3d 404, 414–15, 417 (Tex. Crim. App. 2006). To reverse under the second ground, we must determine, with some objective basis in the record, that the great

8

weight and preponderance of all the evidence, though legally sufficient, contradicts the verdict. *Grotti*, 2008 Tex. Crim. App. LEXIS 761, at *23. A clearly wrong and manifestly unjust verdict occurs where the jury's finding "shocks the conscience" or "clearly demonstrates bias." *Jones v. State*, 944 S.W.2d 642, 648 (Tex. Crim. App. 1996).

Under either standard, our role is that of appellate review, and the fact finder is the judge of the weight and credibility of a witness's testimony. *Wesbrook v. State*, 29 S.W.3d 103, 111–12 (Tex. Crim. App. 2000). The fact finder may choose to believe all, some, or none of a witness's testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). Thus, the fact finder determines the weight to be given testimony and resolves any conflicts in the evidence. *Wesbrook*, 29 S.W.3d at 111. With respect to our factual sufficiency review, we are authorized to disagree with the jury's determination, even if probative evidence exists that supports the verdict, *see Clewis v. State*, 922 S.W.2d 126, 133 (Tex. Crim. App. 1996), but our evaluation should not substantially intrude upon the jury's role as the judge of the weight and credibility of witness testimony. *Santellan v. State*, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997).

**Applicable Law and Analysis**

As charged in the indictment, the State was required to prove that 1) Appellant intentionally, knowingly, or recklessly caused bodily injury to Trooper Goines, 2) Appellant knew that Trooper Goines was a public servant, and 3) Trooper Goines was lawfully discharging an official duty. *See* TEX. PENAL CODE ANN. § 22.01 (Vernon Supp. 2008). Appellant recognizes that, as a general rule, the State need not prove that a defendant knew the public servant was lawfully discharging an official duty. *Montoya v. State*, 744 S.W.2d 15, 30 (Tex. Crim. App. 1987), *overruled on other grounds by Cockrell v. State*, 933 S.W.2d 73 (Tex. Crim. App. 1996). Appellant argues, however, that the State accepted a higher burden in this case by permitting the trial court to submit an application paragraph that required the jury to convict only if they believed Appellant knew at the time of the assault that Trooper Goines was a public servant **and** was investigating and detaining Appellant for a violation of the law. We have previously addressed this argument in another case and found it to be without merit. *See Thurman v. State*, No. 12-05-00384-CR, 2007 Tex. App. LEXIS 135, at *12-13 (Tex. App.–Tyler 2007, no pet.) (mem. op., not designated for publication).

9

The sufficiency of the evidence is no longer measured by the application paragraph of the charge. *Id.* Instead, we measure the legal sufficiency of the evidence against a hypothetically correct jury charge that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.* Here, a hypothetically correct jury charge would not require proof that Appellant knew at the time of the assault that Trooper Goines was a public servant and was investigating and detaining Appellant for a violation of the law.

Viewing the evidence in the light most favorable to the jury's verdict, Trooper Goines's testimony established that Appellant punched, rammed, elbowed, and kicked Trooper Goines in an effort to avoid being arrested. Trooper Goines's testimony further established that he experienced pain as a result. We conclude that the jury could have determined beyond a reasonable doubt that Appellant committed assault on a public servant as charged in the indictment. Thus, we hold that the evidence is legally sufficient. *See Willis*, 192 S.W.3d at 592. We overrule the portion of Appellant's second issue that relates to legal sufficiency.

As to Appellant's factual sufficiency challenge, in addition to the evidence discussed above, we consider the evidence that contradicts the jury's verdict. We also measure factual evidentiary sufficiency by the elements of the offense as defined by a hypothetically correct jury charge. *See Wooley v. State*, No. PD-0861-07, 2008 WL 2512843, at *6 (Tex. Crim. App. June 25, 2008). Tennison testified that she saw no fighting. She claimed that Appellant was running away from Trooper Goines and that Appellant then fell to the ground after Trooper Goines shot his pistol a second time. Additionally, Trooper Goines was not bruised by any of Appellant's conduct. Although Trooper Goines had lacerations on his arm, he testified that those were caused by wrestling with Appellant in a briar patch. The jury could have determined that those lacerations were caused by the trooper's attempting to catch and arrest Appellant rather than by Appellant's assaulting Trooper Goines.

Although there is evidence that contradicts the jury's verdict, we are convinced that the verdict is supported by factually sufficient evidence. Regarding Tennison's testimony, the jury heard

10

that she turned her back for at least a portion of the incident. Further, the jury was within its discretion to believe the testimony of the alleged victim of the assault, Trooper Goines, over that of Tennison. *Wesbrook*, 29 S.W.3d at 111. Having reviewed the entire record, we conclude that the proof of guilt is not so obviously weak or otherwise so greatly outweighed by contrary proof as to render Appellant's conviction clearly wrong or manifestly unjust. *See **Grotti**,* 2008 Tex. Crim. App. LEXIS 761, at *23. Therefore, we hold that the evidence is factually sufficient. We overrule the portion of Appellant's third issue relating to factual sufficiency.

## DISPOSITION

We ***affirm*** the judgment of the trial court.


  BRIAN HOYLE  
Justice


Opinion delivered September 24, 2008.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(DO NOT PUBLISH)

11