

# IN THE
# TENTH COURT OF APPEALS

### No. 10-14-00033-CR

**VERNON O'DELL TAYLOR, JR.,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

**From the 220th District Court
Hamilton County, Texas
Trial Court No. CR-07716**

## MEMORANDUM OPINION

In one issue, appellant, Vernon O'Dell Taylor Jr., challenges his conviction for delivery of a controlled substance, marihuana, in an amount less than five pounds but more than one-fourth of an ounce. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.120(b)(3) (West 2010). Taylor asserts that the trial court abused its discretion by admitting a confidential informant's hearsay statement. Because we conclude that Taylor has not preserved his complaint for appellate review, we affirm.

## I.    BACKGROUND

On or about July 12, 2011, Investigator Justin Caraway of the Hamilton County Sheriff's Office arranged for a confidential informant, J.C., to purchase marihuana from Taylor. Investigator Caraway testified that J.C. called at 5:58 p.m. to tell him that Taylor "had agreed to sell her a half ounce of marijuana for $50." During a telephone conversation that was monitored by Investigator Caraway, Taylor told J.C. to meet him at the car wash on Highway 36, in Hamilton, Texas. Prior to leaving, officers searched J.C. and her car to ensure that she only had the money to pay Taylor and not any drugs or other contraband. Officers also placed recording devices on J.C.'s person and in her car.

Investigator Caraway and former Deputy Troy Herrera followed J.C. to the car wash in an unmarked car. Upon arriving, Investigator Caraway observed Taylor reach inside his car, walk over to J.C.'s car, and hand J.C. something. Taylor and J.C. spoke for about two minutes and then left. The deputies followed J.C. back to the sheriff's office. At the office, J.C. handed Investigator Caraway a cigarette package that Taylor had given her. Investigator Caraway discovered that the package contained marihuana and that the combined weight of the packaging and marihuana was 17.3 grams. Subsequent testing by Brian Kivlighn, a forensic scientist at the Texas Department of Public Safety, revealed that the cigarette package contained 14.28 grams, or 0.50 ounces, of marihuana. Taylor was later arrested and charged with delivery of a controlled substance,

marihuana, in an amount less than five pounds but more than one-fourth of an ounce. *See id.*

At the conclusion of the evidence, the jury found Taylor guilty of the charged offense. Thereafter, the trial court sentenced Taylor to imprisonment for two years in the State Jail Division of the Texas Department of Criminal Justice. This appeal followed.[1]

## II.   ANALYSIS

In his only issue on appeal, Taylor contends that the trial court abused its discretion by admitting a confidential informant's hearsay statement.

## A.   Applicable Law

We review a trial court's decision to admit evidence for an abuse of discretion. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). A trial court abuses its discretion only if its decision is "so clearly wrong as to lie outside the zone within which reasonable people might disagree." *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008). A trial court does not abuse its discretion if any evidence support its decision. *See Osbourn v. State*, 92 S.W.3d 531, 538 (Tex. Crim. App. 2002). We will uphold the trial court's evidentiary ruling if it was correct on any theory of law applicable to the case. *See De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

---

[1] This Court dismissed Taylor's first appeal because his notice of appeal was untimely. *See generally Taylor v. State*, No. 10-12-00350-CR, 2013 Tex. App. LEXIS 1762 (Tex. App.—Waco Feb. 21, 2013, no pet.) (mem. op., not designated for publication). However, the Court of Criminal Appeals later granted Taylor an out-of-time appeal. *See Ex parte Taylor*, No. WR-79,830-02, 2013 Tex. Crim. App. Unpub. LEXIS 1328 (Tex. Crim. App. Dec. 18, 2013) (per curiam).

**B.     Discussion**

On appeal, Taylor complains about the following statement made by Investigator Caraway at trial: "She informed me that the Defendant had agreed to sell her a half ounce of marijuana for $50." However, in analyzing this issue, we must consider the context of Investigator Caraway's testimony. The line of questioning pertaining to J.C.'s involvement in the case included the following exchange:

Q [The State]: Okay. How did you become involved in this case?

A [Investigator Caraway]: I had a confidential informant that had set up a prearranged agreement to purchase marijuana from the Defendant.

Q: Who is your confidential informant?

A: In this case[,] it was [J.C.].

Q: Had [J.C.] worked for you in the past?

A: Yes.

Q: Why was—why was the Sheriff's Department using her as a confidential informant?

A: She had a pending criminal charge against her and she was working for us for consideration for that charge. The charge is actually still pending.

Q: When you said consideration does that mean you pay her?

A:                    In this—in this instance it would mean she would set up other narcotics dealers to allow us to bust more dealers in the county, possibly introduce me to dealers where I can make undercover buys and in exchange[,] she would get consideration from us, from the D.A., possibly get the case dismissed or some type of other (unintelligible).

Q:                    And she had provided you with credible and reliable information in the past?

A:                    That is correct.

Q:                    Do you know on about how many occasions?

A:                    She had provided information and done some controlled deliveries for us, as well. I'm not exactly sure the number.

Q:                    So she calls you on July 12th. Do you know approximately what time?

A:                    My case report states approximately 17:58 hours.

Q:                    Which is?

A:                    5:58 p.m.

Q:                    All right. What—what did y'all do?

A:                    She informed me that the Defendant had agreed to sell her a half ounce of marijuana for $50. I then told her to come to the Sheriff's Office where we would try to do a controlled phone call.

Q:                    What—what is a controlled—

| [Defense counsel]: | Your Honor, I am going to have to object at this point to hearsay in relation to what the—what [J.C.] allegedly told Mr. Caraway. |
| --- | --- |
| [THE COURT]: | You are too late.[2] |

Generally, to preserve error for appellate review, a complaining party must make a timely and specific objection in the trial court and obtain a ruling. *See* TEX. R. APP. P. 33.1(a)(1); *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002). The Court of Criminal Appeals has stated that: "A complaint is timely if it is made 'as soon as the ground of objection becomes apparent.'" *Pena v. State*, 353 S.W.3d 797, 807 (Tex. Crim. App. 2011) (quoting *Hollins v. State*, 805 S.W.2d 475, 476 (Tex. Crim. App. 1991)); *see Russell v. State*, 904 S.W.2d 191, 196-97 (Tex. App.—Amarillo 1995, pet. ref'd) ("To be timely, the objection must have been made at the earliest possible opportunity. Objections made after questions are answered do not preserve error for appeal." (internal citations omitted)); *Hernandez v. State*, 808 S.W.2d 536, 545 (Tex. App.—Waco 1991, no pet.) ("An objection is not timely unless it is made at the earliest possible moment." (citing *Wiggins v. State*, 778 S.W.2d 877, 895 (Tex. App.—Dallas 1989, pet. ref'd))).

Here, the record does not reflect that Taylor objected in a timely manner. *See* TEX. R. APP. P. 33.1(a)(1); *see also Pena*, 353 S.W.3d at 807; *Hollins*, 805 S.W.2d at 476.

---

2 Though the trial court did not expressly overrule or sustain Taylor's objection, Texas Rule of Appellate Procedure 33.1(a)(2)(A) provides that error is preserved if, among other things, the trial court implicitly ruled on the objection. *See* TEX. R. APP. P. 33.1(a)(2)(A). By saying "[y]ou are too late," we conclude that the trial court implicitly denied Taylor's objection. *See id.*

Specifically, defense counsel did not object to the complained-of testimony until after Investigator Caraway had added an additional sentence to his answer and the State had proceeded to ask a portion of its follow-up question. In similar circumstances, several Texas courts, including this one, have held that such an objection is untimely. *See Webb v. State*, 480 S.W.2d 398, 400 (Tex. Crim. App. 1972) ("In regard to Officer Williams' testimony, no objection was taken until after the questions were asked and answered. Appellant's objection was upon a ground which was apparent when the first question was asked; therefore, his objection was not timely and no error is preserved for review."), *rev'd on other grounds*, 409 U.S. 95, 93 S. Ct. 351, 34 L. Ed. 2d 330 (1972); *Hernandez*, 808 S.W.2d at 544-45 (concluding that an objection was untimely when defense counsel objected after an additional question after the complained-of response was asked and answered)[3]; *Morelos v. State*, 772 S.W.2d 497, 507 (Tex. App.—Houston [14th Dist.] 1989,

---

[3] In *Hernandez*, this Court concluded that defense counsel's objection was untimely based on the following exchange:

> Q Sir, have you ever been convicted of a felony offense or a misdemeanor offense involving moral turpitude or placed on felony adult probation, sir, in this state, any state, or the United States within the last ten years?
>
> A Yes, sir.
>
> Q For what?
>
> A Yes sir.
>
> Q My next question, for what?
>
> INTERPRETER: I'm sorry.

pet. ref'd) (concluding that an objection was untimely because the defendant did not object until the prosecutor's second question regarding the same subject matter).

Accordingly, in this case, we do not believe that Taylor objected as soon as the ground of objection became apparent. *See* TEX. R. APP. P. 33.1(a)(1); *Pena*, 353 S.W.3d at 807; *Hollins*, 805 S.W.2d at 476; *see also Russell*, 904 S.W.2d at 196-97; *Hernandez*, 808 S.W.2d at 545. Therefore, similar to the trial court, we, too, conclude that Taylor's objection was "too late." *See* TEX. R. APP. P. 33.1(a)(1); *Pena*, 353 S.W.3d at 807; *Hollins*, 805 S.W.2d at 476; *see also Russell*, 904 S.W.2d at 196-97; *Hernandez*, 808 S.W.2d at 545. As such, Taylor has not preserved this complaint for appellate review.

In any event, even if Taylor had preserved this complaint for review, we conclude that the admission of the testimony was harmless. In particular, the substance of the complained-of testimony was already admitted without objection earlier in the exchange with Investigator Caraway regarding J.C.'s involvement in the case. As noted earlier, Investigator Caraway noted that: "I had a confidential informant that had set up a prearranged agreement to purchase marijuana from the Defendant." Substantively, the complained-of testimony only added the price and quantity descriptors to the prior testimony. Nonetheless, the prior unobjected-to testimony had already established the

---

[Appellant's attorney]: I object. I would like to approach the bench and move for a mistrial.

808 S.W.2d 536, 544-45 (Tex. App—Waco 1991, no pet.).

same fact—that Taylor had agreed to deliver marihuana to J.C. and thereby committed a criminal offense. Arguably, this testimony is substantially similar to the complained-of testimony. Therefore, even if it was error to admit the complained-of testimony, such error was cured because the same evidence was admitted elsewhere without objection.[4] *See Lane v. State*, 151 S.W.3d 188, 193 (Tex. Crim. App. 2004); *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998). Based on the foregoing, we overrule Taylor's sole issue on appeal.

### III.    CONCLUSION

Having overruled Taylor's sole issue on appeal, we affirm the judgment of the trial court.


AL SCOGGINS
Justice

Before Chief Justice Gray,
        Justice Davis, and
        Justice Scoggins
(Chief Justice Gray concurring with a note)*
Affirmed
Opinion delivered and filed July 30, 2015
Do not publish
[CR25]

---

[4] Notably, on re-cross examination, Taylor's counsel had Investigator Caraway read the following passage from his report: "Caraway performed a search of C.I.'s person prior to providing them with a documented amount of United States currency, $50.00." And as mentioned at trial, the $50 was used to facilitate the transaction.

*(Chief Justice Gray concurs in the Court's judgment which affirms the trial court's judgment of Taylor's conviction. A separate opinion will not issue.)

