**Berdell WILLIS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 12–04–00089–CR.**

Court of Appeals of Texas, Tyler.

Jan. 18, 2006.

Discretionary Review Refused May 10, 2006.

586 

Mark E. Sossi, R.W. Armstrong & Associates, Brownsville, for appellant.

Michael J. West, for appellee.

Panel consisted of WORTHEN, C.J., GRIFFITH, J., and DeVASTO, J.

### MEMORANDUM OPINION

DIANE DeVASTO, Justice.

Berdell Willis appeals his conviction for possession of four hundred or more grams of cocaine, for which he was sentenced to imprisonment for forty years. Appellant raises seven issues on appeal. We affirm.

### BACKGROUND

On July 16, 2003, Highway Patrol Officer Corporal Wayne Hellen stopped a vehicle on Interstate 20 in Smith County, Texas for following too closely to a tractor trailer rig. The car was a rental vehicle. Appellant was the driver of the vehicle. Appellant was listed as the renter on the rental agreement he showed to Hellen. Frederick Wilkins, who was riding in the front passenger seat, was listed on the rental agreement as an authorized driver. The rental agreement indicated that Appellant had rented the car the day before in Mississippi.

According to Hellen, Appellant appeared very nervous—his hands were trembling and the artery in his neck was visibly throbbing. Although Wilkins appeared to be sleeping, Hellen stated that he thought Wilkins was feigning sleep to avoid having to talk to him.

Appellant told Hellen that he was returning home to Mississippi after having taken Little Raymond, his eight year old nephew, to visit his grandmother in Dallas. Appellant further stated that he and Wilkins had been in Dallas a few days despite the fact that the rental car receipt presented to Hellen indicated that Appellant had rented the car in Mississippi the day before.

At approximately 1:45 p.m., Hellen told Appellant that he was going to issue him a written warning for following too closely. At 1:47 p.m., Hellen conversed with Wilkins concerning the reason for their trip. Wilkins told Hellen that he and Appellant had gone to Dallas to pick up Little Raymond to take him to his mother in Mississippi. However, according to Wilkins, when he and Appellant could not find Little Raymond, they left Dallas and headed for Mississippi. Hellen testified that while talking to Appellant and Wilkins, he noticed a strong air freshener smell emanating from the car.

At 1:51 p.m., Hellen asked Appellant whether he had a gun on his person, then frisked Appellant. Hellen next asked Appellant to sit inside his patrol vehicle while he performed a driver's license check on Appellant. Hellen radioed Appellant's and Wilkins's license information to dispatch at 1:53 p.m. At 1:57 p.m., Hellen received word from dispatch that neither Appellant nor Wilkins had any outstanding warrants. As he wrote out a warning,[1] Hellen asked Appellant for permission to search his car. Appellant denied Hellen permission to search. Hellen responded that he wanted to search the car because he believed Appellant was "hauling drugs." Appellant then accused Hellen of racially profiling him. Hellen again requested permission to search Appellant's car, and Appellant again denied Hellen's request. Shortly after 1:59 p.m., Hellen called for a K–9 unit. However, there was a problem regarding availability of a K–9 unit, which necessitated an additional request by Hellen at 2:00

---

1. According to Hellen's testimony, he did not write out the warning all at once as he would stop periodically to talk to Appellant.

p.m. While awaiting the K–9 unit's arrival, Hellen completed the written warning to Appellant at 2:24 p.m.

Ultimately, at 2:28 p.m., Smith County Deputy John Smith and his drug dog arrived on the scene. Smith's dog sniffed the vehicle and alerted to it, indicating the presence of narcotics, which prompted Hellen and Smith to conduct a search of the vehicle. During the search, Smith located a brick of cocaine with four plastic bags over it underneath the front passenger seat. The cocaine weighed approximately one kilogram and had a street value of approximately one hundred thousand dollars.

Appellant was charged with possession of four hundred or more grams of cocaine and pleaded "not guilty." The matter proceeded to jury trial. Ultimately, the jury found Appellant guilty as charged and assessed Appellant's punishment at imprisonment for forty years. The trial court sentenced Appellant accordingly. This appeal followed.

## Motion to Suppress

In his first and second issues, Appellant argues that the cocaine found in the rental car he was driving was the product of an unreasonable seizure in violation of his Fourth Amendment rights. More specifically, Appellant argues that once the purpose for the traffic stop had been accomplished, Hellen had no further cause to detain him.

■■■ We review a trial court's ruling on a motion to suppress for abuse of discretion. *See Villarreal v. State,* 935 S.W.2d 134, 138 (Tex.Crim.App.1996); *Curry v. State,* 965 S.W.2d 32, 33 (Tex. App.-Houston [1st Dist.] 1998, no pet.). A trial court does not abuse its discretion when its decision is at least within the zone of reasonable disagreement. *See Mont-*

*gomery v. State,* 810 S.W.2d 372, 391 (Tex. Crim.App.1990) (op. on reh'g).

■■■ In reviewing the trial court's ruling, we apply a bifurcated standard of review. *See Carmouche v. State,* 10 S.W.3d 323, 327 (Tex.Crim.App.2000); *Hernandez v. State,* 957 S.W.2d 851, 852 (Tex.Crim.App.1998). We give almost total deference to the trial court's determination of historical facts, while conducting a de novo review of the trial court's application of the law to those facts. *See Carmouche,* 10 S.W.3d at 327. The trial court is the exclusive finder of fact in a motion to suppress hearing, and as such, it may choose to believe or disbelieve any or all of any witness's testimony. *Romero v. State,* 800 S.W.2d 539, 543 (Tex.Crim.App.1990). Furthermore, when, as in the instant case, "the trial court fails to file findings of fact, we view the evidence in the light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record." *State v. Ross,* 32 S.W.3d 853, 855 (Tex.Crim.App.2000). If the trial judge's decision is correct on any theory of law applicable to the case, the decision will be sustained. *Id.* at 856.

### Length of Detention

■■■ As a general matter, the Supreme Court has recognized that the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred. *Walter v. State,* 28 S.W.3d 538, 542 (Tex.Crim.App.2000) (citing *Whren v. United States,* 517 U.S. 806, 810, 116 S.Ct. 1769, 1772, 135 L.Ed.2d 89 (1996)). Furthermore, during a routine traffic stop, an officer is permitted to detain the individual in order to check for outstanding warrants. *See Walter,* 28 S.W.3d at 542. An officer may also request a driver's license, liability

insurance information, vehicle ownership information, the driver's destination, and the purpose of the trip. *See Veal v. State,* 28 S.W.3d 832, 835 (Tex.App.-Beaumont 2000, pet. ref'd). While an officer is awaiting a computer warrant check, questioning about matters unrelated to the initial traffic stop does not violate the Fourth Amendment because such questioning does not extend the duration of an initial valid seizure. *Haas v. State,* 172 S.W.3d 42, 50 (Tex.App.-Waco 2005, no pet.) (citing *United States v. Sharpe,* 470 U.S. 675, 687, 105 S.Ct. 1568, 1576, 84 L.Ed.2d 605 (1985)). In some circumstances, however, extensive questioning about unrelated matters may exceed the scope of the initial stop. *Haas,* 172 S.W.3d at 50 (citing *United States v. Kelley,* 981 F.2d 1464, 1470 (5th Cir.1993)).

Here, Appellant concedes that the initial stop for following another vehicle too closely was justified. Thus, our inquiry will focus on whether the detention extended beyond a reasonable duration, that is, whether Hellen diligently pursued a means of investigation that was likely to confirm or dispel his suspicions quickly. *See Haas,* 172 S.W.3d at 51–52. A routine traffic stop is a detention and, thus, must be reasonable under the United States and Texas Constitutions. *See Davis v. State,* 947 S.W.2d 240, 244 (Tex.Crim.App.1997). To be reasonable, a traffic stop must be temporary and last no longer than is necessary to effectuate the purpose of the stop. *See Florida v. Royer,* 460 U.S. 491, 500, 103 S.Ct. 1319, 1325, 75 L.Ed.2d 229 (1983); *Davis,* 947 S.W.2d at 245. If the detention becomes prolonged, it can no longer be considered an investigative stop; but there is no rigid time limitation on the permissible length of an investigative stop. *Herrera v. State,* 80 S.W.3d 283, 288 (Tex. App.-Texarkana 2002, pet. ref'd).

On appeal, we review the reasonableness of the detention from the same perspective as the officer: using an objective standard, we ask whether the facts available at the moment of detention would warrant a person of reasonable caution to have the belief that the action taken was appropriate. *Haas,* 172 S.W.3d at 52. The determination of reasonable suspicion is made by considering the totality of the circumstances. *Id.*

Hellen's questioning of Appellant and Wilkins, even when such questioning was unrelated to Appellant's traffic violation, was legitimate. *See Haas,* 172 S.W.3d at 53; *United States v. Dortch,* 199 F.3d 193, 198 (5th Cir.1999). Moreover, all articulable facts and rational inferences from those facts that Hellen discovered during the lawful detention—driver appeared nervous, passenger appeared to be feigning sleep to avoid talking to Hellen, rental car traveling known drug corridor, heavy scent of air freshener, passenger and driver giving inconsistent stories regarding purpose of their trip, driver's story concerning trip contradicting rental agreement presented to officer—could form the basis for further reasonable detention and justify further investigation. *See Haas,* 172 S.W.3d at 53 (citing *Razo v. State,* 577 S.W.2d 709, 711 (Tex.Crim.App. [Panel Op.] 1979); *Powell v. State,* 5 S.W.3d 369, 378–79 (Tex.App.-Texarkana 1999, pet. ref'd); *Mohmed v. State,* 977 S.W.2d 624, 628 (Tex.App.-Fort Worth 1998, pet. ref'd); *Bustamante v. State,* 917 S.W.2d 144, 146 (Tex.App.-Waco 1996, no pet.)); *see also Wolf v. State,* 137 S.W.3d 797, 804 (Tex.App.-Waco 2004, no pet.) (stop may be lengthened to accommodate its new justification).

Hellen's questioning of Appellant and Wilkins concerning the purpose of their trip was justified as was his questioning while he waited for dispatch to return any outstanding warrant information. *See*

*Haas,* 172 S.W.3d at 50. The record reflects that at 1:57 p.m., Hellen received a notification from dispatch that neither Appellant nor Wilkins had any outstanding warrants. As he wrote out a warning, Hellen asked Appellant for permission to search his car. Appellant declined Hellen permission to search. Hellen responded that he wanted to search the car because he believed Appellant was "hauling drugs." Appellant then accused Hellen of racially profiling him. Hellen again requested permission to search Appellant's car, and Appellant again denied Hellen's request. Shortly after 1:59 p.m., Hellen called for a K–9 unit. We conclude that Hellen had reasonable suspicion to continue to question Appellant for between two and three minutes after he received the report from dispatch that there were no outstanding warrants. We further conclude that Hellen had reasonable suspicion to request a K–9 unit to perform a sniff on the car. Any further extension of Appellant's detention was due to the fact that a K–9 unit was not readily available. We note that Hellen sought to expedite a K–9 unit's arrival by making a follow-up request one minute after he made the initial request. *See, e.g., Haas,* 172 S.W.3d at 54 n. 8 (held twenty minute wait four backup to arrive and canine sniff to begin was not unreasonable) (citing *Sims v. State,* 98 S.W.3d 292, 294 (Tex.App.-Houston [1st Dist.] 2003, pet. ref'd)). We hold that Hellen's detention of Appellant did not violate Appellant's Fourth Amendment rights. Appellant's first issue is overruled.

### Improperly Admitted Evidence

Appellant next argues that the trial court erred in overruling his objections to the admissibility of the cocaine located in the car because it was obtained as the result of a warrantless and unreasonable seizure. As we have held that Hellen's detention of Appellant did not violate Appellant's Fourth Amendment rights, we likewise hold that the trial court did not err in admitting the cocaine discovered in the car on such grounds. Appellant's second issue is overruled.

### EVIDENTIARY SUFFICIENCY

In his third and fourth issues, Appellant argues that the evidence was both legally and factually insufficient to support the jury's verdict for possession of cocaine. Specifically, Appellant argues that there is insufficient evidence to support that he possessed the cocaine in question knowingly.

### Legal Sufficiency

 Legal sufficiency is the constitutional minimum required by the Due Process Clause of the Fourteenth Amendment to sustain a criminal conviction. *See Jackson v. Virginia,* 443 U.S. 307, 315–16, 99 S.Ct. 2781, 2786–787, 61 L.Ed.2d 560 (1979); *see also Escobedo v. State,* 6 S.W.3d 1, 6 (Tex.App.-San Antonio 1999, pet. ref'd). The standard for reviewing a legal sufficiency challenge is whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson,* 443 U.S. at 320, 99 S.Ct. at 2789; *see also Johnson v. State,* 871 S.W.2d 183, 186 (Tex.Crim. App.1993). The evidence is examined in the light most favorable to the jury's verdict. *See Jackson,* 443 U.S. at 320, 99 S.Ct. at 2789; *Johnson,* 871 S.W.2d at 186. A successful legal sufficiency challenge will result in rendition of an acquittal by the reviewing court. *See Tibbs v. Florida,* 457 U.S. 31, 41–42, 102 S.Ct. 2211, 2217–18, 72 L.Ed.2d 652 (1982). A claim regarding sufficiency of the evidence need not be preserved for review at the trial level and is not waived by the failure to do so. *Rankin v. State,* 46 S.W.3d 899, 901 (Tex. Crim.App.2001).

The sufficiency of the evidence is measured against the offense as defined by a hypothetically correct jury charge. *See Malik v. State,* 953 S.W.2d 234, 240 (Tex. Crim.App.1997). Such a charge would include one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant is tried." *Id.*

To support a conviction for possession of a controlled substance, the State must show (1) that the accused exercised actual care, control, or custody of the substance, (2) that he was conscious of his connection with it, and (3) that he possessed the substance knowingly or intentionally. *See* Tex. Health & Safety Code Ann. §§ 481.103(3)(D), 481.115(f) (Vernon 2003 & Supp.2005); *Brown v. State,* 911 S.W.2d 744, 747 (Tex.Crim.App.1995). The evidence used to satisfy these elements can be either direct or circumstantial. *Id.*

Be it by direct or circumstantial evidence, the State must establish that the accused's connection with the substance was more than just fortuitous. *Id.* However, when the contraband is not found on the accused's person or is not in the accused's exclusive possession, additional facts must affirmatively link the accused to the contraband. *See Jones v. State,* 963 S.W.2d 826, 830 (Tex.App.-Texarkana 1998, pet. ref'd). The affirmative link ordinarily emerges from an orchestration of several factors and the logical force they have in combination. *Id.*

Among the nonexclusive factors that may be considered when evaluating affirmative links are (1) whether the contraband was in plain view or recovered from an enclosed place; (2) whether the accused was the owner of the premises or had the right to possess the place where the contraband was found, or was the owner or driver of the automobile in which the contraband was found; (3) whether the accused was found with a large amount of cash; (4) whether the contraband was conveniently accessible to the accused or found on the same side of the vehicle as the accused was sitting; (5) whether the contraband was found in close proximity to the accused; (6) whether a strong residual odor of the contraband was present; (7) whether the accused possessed other contraband when arrested; (8) whether paraphernalia to use the contraband was in view or found on the accused; (9) whether the physical condition of the accused indicated recent consumption of the contraband in question; (10) whether conduct by the accused indicated a consciousness of guilt; (11) whether the accused attempted to escape or flee; (12) whether the accused made furtive gestures; (13) whether the accused had a special connection to the contraband; (14) whether the occupants of the premises gave conflicting statements about relevant matters; (15) whether the accused made incriminating statements connecting himself to the contraband; (16) the quantity of the contraband; and (17) whether the accused was observed in a suspicious place under suspicious circumstances. *See Lassaint v. State,* 79 S.W.3d 736, 740–41 (Tex.App.-Corpus Christi 2002, no pet).

In the case at hand, Hellen testified that Interstate 20 was a heavily traveled narcotics corridor from Dallas to the east coast. Hellen further testified that drug couriers often use rental cars to avoid having their own vehicles subject to seizure if they are apprehended. The record reflects that Appellant and Wilkins were stopped on Interstate 20 in a rental car and that Appellant's name and driver's license number was typed onto the rental agreement. *See, e.g., Mohmed v. State,*

977 S.W.2d 624, 627 (Tex.App.-Fort Worth 1998, pet. ref'd). The application indicated that Appellant had rented the car the day before. Appellant and Wilkins gave conflicting stories about the underlying reasons for their trip from Mississippi to Dallas. Moreover, Appellant told Hellen that he and Wilkins had been in Dallas a few days, despite the fact that the rental agreement indicated that Appellant had rented the car in Mississippi the day before. A strong scent of air freshener emanated from the car, which Hellen stated is an indicator of a common practice employed by drug traffickers to cut down the smell of the drugs. Hellen testified that Appellant appeared extremely nervous because his hands were trembling and the artery on his neck was throbbing. The record further reflects that the cocaine Smith located was underneath the front passenger seat and was a large amount of cocaine weighing approximately one kilogram and having a street value of approximately one hundred thousand dollars.

Examining the aforementioned evidence in the light most favorable to the jury's verdict and in light of the nonexclusive factors set forth above, we conclude that the jury could have reasonably determined beyond a reasonable doubt that Appellant possessed the cocaine located in the passenger compartment in the car in which he was traveling knowingly and intentionally, that he exercised actual care, custody, or control of the cocaine, and that he was conscious of his connection with it. Therefore, we hold that the evidence was legally sufficient to support the jury's verdict. Appellant's third issue is overruled.

### Factual Sufficiency

■■■ Turning to Appellant's contention that the evidence is not factually suffi-

cient to support the jury's verdict, we must first assume that the evidence is legally sufficient under the *Jackson* standard. *See Clewis v. State*, 922 S.W.2d 126, 134 (Tex.Crim.App.1996). We then consider all of the evidence weighed by the jury that tends to prove the existence of the elemental fact in dispute and compare it to the evidence that tends to disprove that fact. *See Santellan v. State*, 939 S.W.2d 155, 164 (Tex.Crim.App.1997). Although we are authorized to disagree with the jury's determination, even if probative evidence exists that supports the verdict, *see Clewis*, 922 S.W.2d at 133, our evaluation should not substantially intrude upon the jury's role as the sole judge of the weight and credibility of witness testimony. *Santellan*, 939 S.W.2d at 164. Where there is conflicting evidence, the jury's verdict on such matters is generally regarded as conclusive. *See Van Zandt v. State*, 932 S.W.2d 88, 96 (Tex.App.El Paso 1996, pet. ref'd). Ultimately, we must ask whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine our confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. *Johnson v. State*, 23 S.W.3d 1, 11 (Tex.Crim.App. 2000).[2]

■■■ A verdict will be set aside "only if the evidence supporting guilt is so obviously weak, or the contrary evidence so overwhelmingly outweighs the supporting evidence, as to render the conviction clearly wrong and manifestly unjust." *Ortiz v. State* 93 S.W.3d 79, 87 (Tex.Crim.App. 2002); *see Sims v. State*, 99 S.W.3d 600, 601 (Tex.Crim.App.2003). A clearly wrong

---

**2.** However, "contrary evidence does not have to outweigh evidence of guilt; it has to be only enough to provide reasonable doubt."

*Zuniga v. State*, 144 S.W.3d 477, 483 (Tex. Crim.App.2004).

and manifestly unjust verdict occurs where the jury's finding "shocks the conscience," or "clearly demonstrates bias." *Zuniga,* 144 S.W.3d at 481.

As the court of criminal appeals explained in *Zuniga,* "There is only one question to be answered in a factual sufficiency review: Considering all of the evidence in a neutral light, was a jury rationally justified in its finding of guilt beyond a reasonable doubt?" *See id.* at 484.

In the case at hand, in addition to the evidence already discussed, the record reflects that some facts do not affirmatively link Appellant to the cocaine in question. Appellant has not addressed such facts. However, we note that (1) the cocaine was not in plain view, (2) Appellant did not have a large amount of cash on his person when he was arrested, (3) Hellen stated that he could not smell the cocaine when he was speaking to Appellant and Wilkins, (4) Appellant did not possess any contraband or drug paraphernalia at the time of his arrest, (5) Appellant was not impaired due to the consumption of narcotics, (6) Appellant did not attempt to escape, and (7) Appellant made no furtive gestures or incriminating statements.

We have reviewed the record in its entirety. We iterate that our evaluation should not substantially intrude upon the jury's role as the sole judge of the weight and credibility of witness testimony, *see Santellan,* 939 S.W.2d at 164, and where there is conflicting evidence, the jury's verdict on such matters is generally regarded as conclusive. *See Van Zandt,* 932 S.W.2d at 96. We further note that there is no set formula for finding an affirmative link, but rather affirmative links are established by a consideration of a totality of the circumstances. *See Hyett v. State,* 58 S.W.3d 826, 830 (Tex.App.-Houston [14th Dist.] 2001, pet. ref'd).

Our review of the record as a whole, with consideration given to all of the evidence, both for and against the jury's finding, has not revealed to us any evidence that causes us to conclude that the proof of guilt is so obviously weak or is otherwise so greatly outweighed by contrary proof as to render Appellant's conviction clearly wrong or manifestly unjust. Therefore, we hold that the evidence is factually sufficient to support the jury's verdict. Appellant's fourth issue is overruled.

### PROSECUTORIAL ARGUMENT

In his fifth issue, Appellant argues that the prosecutor improperly argued to the jury that it should consider Appellant's refusal to consent to the search of his vehicle as proof of his knowledge that there were drugs present in the car. However, as the State notes in its brief, Appellant made no objection to the prosecutor's allegedly impermissible comments to the jury. As a prerequisite to presenting a complaint for appellate review, the record must show that the complaint was made to the trial court by a timely request, objection, or motion that stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, and that the trial court ruled or refused to rule on the request, objection or motion. *See* TEX.R.APP. P. 33.1(a). Therefore, by his failure to raise an objection to the trial court concerning the matter he now seeks to argue on appeal, Appellant has waived such error, if any, on the trial court's part. Appellant's fifth issue is overruled.

### CRUEL AND UNUSUAL PUNISHMENT

In his sixth issue, Appellant contends that Appellant's forty year sentence amounts to cruel and unusual punishment. Initially, we note that Appellant

made no objection to the trial court raising the issue of cruel and unusual punishment and has, therefore, waived such an issue on appeal. *See Rhoades v. State,* 934 S.W.2d 113, 120 (Tex.Crim.App.1996) (waiver with regard to rights under the Texas Constitution); *Curry v. State,* 910 S.W.2d 490, 497 (Tex.Crim.App.1995) (waiver with regard to rights under the United States Constitution); Tex.R.App. P. 33.1. However, even absent waiver, we conclude that Appellant's sentence did not constitute cruel and unusual punishment.

■■■ The legislature is vested with the power to define crimes and prescribe penalties. *See Davis v. State,* 905 S.W.2d 655, 664 (Tex.App.-Texarkana 1995, pet. ref'd); *see also Simmons v. State,* 944 S.W.2d 11, 15 (Tex.App.-Tyler 1996, pet. ref'd). Courts have repeatedly held that punishment which falls within the limits prescribed by a valid statute is not excessive, cruel, or unusual. *See Harris v. State,* 656 S.W.2d 481, 486 (Tex.Crim.App.1983); *Jordan v. State,* 495 S.W.2d 949, 952 (Tex. Crim.App.1973); *Davis,* 905 S.W.2d at 664. In the case at hand, Appellant was convicted of possession of four hundred or more grams of cocaine. *See* Tex. Health & Safety Code Ann. §§ 481.115(a), (f); 481.102(3)(D) (Vernon 2003 & Supp.2005). The punishment range for such an offense is imprisonment for between ten and ninety-nine years or life and a fine not to exceed $100,000.00. Tex. Health & Safety Code Ann. § 481.115(f) (Vernon 2005). Here, the punishment assessed by the trial court falls within the range set forth by the legislature. *Id.* Therefore, the punishment is not prohibited as cruel, unusual, or excessive per se.

Nonetheless, Appellant urges the court to perform the three part test originally set forth in *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). Under this test, the proportionality of a sentence is evaluated by considering (1) the gravity of the offense and the harshness of the penalty, (2) the sentences imposed on other criminals in the same jurisdiction, and (3) the sentences imposed for commission of the same crime in other jurisdictions. *Solem,* 463 U.S. at 292, 103 S.Ct. at 3011.[3] The application of the *Solem* test has been modified by Texas courts and the Fifth Circuit Court of Appeals, in light of the Supreme Court's decision in *Harmelin,* to require a threshold determination that the sentence is grossly disproportionate to the crime before addressing the remaining elements. *See, e.g., McGruder,* 954 F.2d at 316; *see also Jackson v. State,* 989 S.W.2d 842, 845–46 (Tex.App.-Texarkana 1999, no pet.).

In determining whether Appellant's sentence is grossly disproportionate, we are guided by the holding in *Rummel v. Estelle,* 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980).[4] In *Rummel,* the Su-

**3.** The strict application of the *Solem* test has been questioned since the Supreme Court rendered its opinion in *Harmelin v. Michigan,* 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991). *See Simmons,* 944 S.W.2d at 15. The Texarkana Court of Appeals discussed the applicability of *Solem* in *Davis v. State* and observed that five members of the Supreme Court in *Harmelin* rejected application of the three factor test. *Id.* (citing *Davis,* 905 S.W.2d at 664). However, the court in *Davis* nevertheless evaluated the sentence under the elements of *Solem* recognizing that seven of the justices in *Harmelin* still supported an Eighth Amendment prohibition against grossly disproportionate sentences. *See Davis,* 905 S.W.2d at 664 (citing *McGruder v. Puckett,* 954 F.2d 313, 316 (5th Cir.), *cert. denied,* 506 U.S. 849, 113 S.Ct. 146, 121 L.Ed.2d 98 (1992) and *Lackey v. State,* 881 S.W.2d 418, 421 (Tex.App.-Dallas 1994, pet. ref'd)).

**4.** Incidentally, the Fifth Circuit has referred to *Rummel* as a "handy guide" in conducting a proportionality review. *See McGruder,* 954 F.2d at 317.

preme Court addressed the proportionality claim of an appellant who had received a mandatory life sentence under a prior version of the Texas habitual offender statute for a conviction for obtaining $120.75 by false pretenses. *Id.,* 445 U.S. at 266, 100 S.Ct. at 1135. The life sentence was imposed because the appellant also had two prior felony convictions-one for fraudulent use of a credit card to obtain $80.00 worth of goods or services and the other for passing a forged check in the amount of $28.36. *Id.,* 445 U.S. at 266, 100 S.Ct. at 1134–35. After both recognizing the legislative prerogative to classify offenses as felonies and considering the purpose of the habitual offender statute, the court determined that the appellant's mandatory life sentence did not constitute cruel and unusual punishment. *Id.,* 445 U.S. at 285, 100 S.Ct. at 1145.

In the case at hand, the offense committed by Appellant—delivery of four hundred or more grams of cocaine—was far more serious than the offenses committed by the appellant in *Rummel,* while Appellant's forty-year sentence is far less severe than the life sentence upheld by the Supreme Court in *Rummel.* Thus, it follows that if the sentence in *Rummel* was not unconstitutionally disproportionate, then neither is the sentence assessed against Appellant in the case at hand. Therefore, since we do not find the threshold test to be satisfied, we need not apply the remaining elements of the *Solem* test. Appellant's sixth issue is overruled.

### Motion for New Trial/Motion for Judgment N.O.V.

In his seventh issue, Appellant contends that the trial court erred in overruling his motion for new trial or, alternatively, his motion for judgment N.O.V. Appellant elaborates that he preserved all error by previously raising the issues in this brief with the trial court, save and except his fifth issue concerning improper prosecutorial argument. With regard to his fifth issue, Appellant argues that the prosecutor's argument was incurable and that no instruction to disregard would have been adequate to cure it. However, inasmuch as Appellant has cited no authority in support of his proposition that the prosecutor's argument was incurable, he has waived any such argument on appeal. *See* TEX.R.APP. P. 38.1(h) (briefs must contain citations to authority in support of argument). Furthermore, Appellant has made no argument concerning why, as he alleges in his seventh issue, the trial court erred in overruling either of the named motions. Therefore, Appellant has also waived that argument on appeal. *Id.* (briefs must contain clear and concise argument for the contentions made). Appellant's seventh issue is overruled.

### Disposition

Having overruled Appellant's issues one, two, three, four, five, six, and seven, we ***affirm*** the trial court's judgment.