# NO. 12-07-00200-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *HORACE JOE BARKER a/k/a JOE BARKER,* <br> *APPELLANT* | *§* | *APPEAL FROM THE 173RD* |
| *V.* | *§* | *JUDICIAL DISTRICT COURT OF* |
| *THE STATE OF TEXAS,* <br> *APPELLEE* | *§* | *HENDERSON COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Horace Joe Barker a/k/a Joe Barker appeals from his convictions for two counts of sexual assault. In one issue, Appellant argues that the evidence was factually insufficient to support the convictions. We affirm.

### BACKGROUND

On New Year's Eve 2005, Appellant was drinking with a group of people including Jeremiah Borchardt, who was eighteen years old, and L.S., the fourteen year old niece of Appellant's girlfriend. Sometime in the overnight hours, Appellant, L.S., and Jeremiah left the gathering and went to Appellant's deceased mother's house. Appellant let Jeremiah and L.S. into the house, and then left them alone. Jeremiah and L.S. went into a bedroom and had sexual intercourse. Just as the two had concluded, Appellant burst into the room. He ordered Jeremiah out of the bedroom, forced him from the house, and locked the door.

Jeremiah stood outside the home until he heard L.S. screaming and telling Appellant to "stop" and to "get off me." Jeremiah went to the window of the bedroom, where he heard L.S. continue to scream and demand that Appellant stop and get off her. Jeremiah also heard the sounds of two people having sexual intercourse, which he described as "the pounding of thighs together." Jeremiah went across the street and used a neighbor's telephone to call the police. The police arrived a short time thereafter.

The police took L.S. to a Tyler hospital to be examined by a sexual assault nurse examiner (SANE). The nurse conducted an examination of the child and collected evidence. Appellant gave several statements to the police. He denied having sex with L.S but admitted entering the bedroom, ousting Jeremiah, spitting on the child, and threatening to tell her mother that she had sex with Jeremiah. Appellant contended that L.S. had concocted the story about his sexually assaulting her in response to his threat to tell her mother what she had been doing.

A Henderson County grand jury indicted Appellant for four counts of aggravated sexual assault and two counts of sexual assault. Appellant pleaded not guilty, and a trial was held.

At trial, L.S. testified that Appellant burst into the room after she and Jeremiah had sexual relations. While she was attempting to dress, Appellant undressed her, pushed her down on the bed, and choked her. L.S. testified that she then "blacked out" and could not remember all the details of the assault. L.S. testified that she felt Appellant's fingers in her vagina. She remembered Appellant being on top of her, going "up and down" on her "like in a sexual act with his sexual organ between her legs." She also remembered telling him to stop and get off her. She testified that she did not have pain in her vaginal area after having sex with Jeremiah, but that her vaginal area hurt after Appellant sexually assaulted her.

The SANE nurse testified about her examination of L.S. The nurse testified that L.S.'s vaginal area was so tender that it was necessary to sedate her in order to conduct the examination. The nurse reported that there was injury to and tearing of L.S.'s vaginal area as well as injury to her anal area. Various diagrams indicating areas of injury and locations of torn tissue were admitted. The nurse concluded that the amount of trauma was not consistent with consensual sexual intercourse. The nurse described L.S. as having a great deal of trauma and pain and testified that blood had pooled in her vaginal vault.

2

A DNA analyst with the Texas Department of Public Safety's crime laboratory testified that numerous DNA samples were found at the scene that were matched to Jeremiah and L.S. Appellant's DNA was not found on swabs taken from L.S.'s person or her garments, but his DNA was discovered in various locations in the bedroom. The analyst testified that the DNA could have been from Appellant's saliva.

The jury found Appellant guilty of Counts V and VI, alleging sexual assault, but not guilty of the other counts alleging aggravated sexual assault.[1] The jury assessed punishment at five years of imprisonment on Count V and ten years of imprisonment on Count VI with a recommendation that the ten year sentence be suspended and Appellant be placed on community supervision. This appeal followed.

## FACTUAL SUFFICIENCY

In a single issue, Appellant argues that the evidence in factually insufficient to support the verdict because the authorities did not recover his DNA during the physical examination of the complaining witness.

### Standard of Review

The due process guarantee of the Fourteenth Amendment requires that a conviction be supported by legally sufficient evidence. *See Jackson v. Virginia*, 443 U.S. 307, 315-16, 99 S. Ct. 2781, 2786-87, 61 L. Ed. 2d 560 (1979); *Ross v. State*, 133 S.W.3d 618, 620 (Tex. Crim. App. 2004); *Willis v. State*, 192 S.W.3d 585, 592 (Tex. App.–Tyler 2006, pet. ref'd). Evidence is not legally sufficient if, when viewing the evidence in a light most favorable to the verdict, we conclude that no rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *see also Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993).

While legal sufficiency is all that is required by the U.S. Constitution, the Texas Court of Criminal Appeals has determined that the Texas Constitution requires review of the factual sufficiency of the evidence. *Clewis v. State*, 922 S.W.2d 126, 129-30 (Tex. Crim. App. 1996). In

---

[1] The jury acquitted Appellant on the counts alleging that he threatened to cause serious bodily injury or used or exhibited a deadly weapon during the assault.

conducting a factual sufficiency review of the evidence, we must first assume that the evidence is legally sufficient. *Santellan v. State*, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997). We review the factual sufficiency of the evidence to determine whether, considering all the evidence in a neutral light, the evidence supporting the conviction is too weak to withstand scrutiny or the great weight and preponderance of the evidence contradicts the jury's verdict to the extent that the verdict is clearly wrong and manifestly unjust. *See Watson v. State*, 204 S.W.3d 404, 414–15, 417 (Tex. Crim. 2006). A verdict will be set aside "only if the evidence supporting guilt is so obviously weak, or the contrary evidence so overwhelmingly outweighs the supporting evidence, as to render the conviction clearly wrong and manifestly unjust." *Ortiz v. State*, 93 S.W.3d 79, 87 (Tex. Crim. App. 2002). A clearly wrong and manifestly unjust verdict occurs where the jury's finding "shocks the conscience" or "clearly demonstrates bias." *Jones v. State*, 944 S.W.2d 642, 648 (Tex. Crim. App. 1996).

The fact that we might harbor a subjective level of reasonable doubt is not enough to overturn a conviction that is founded on legally sufficient evidence. *See Watson*, 204 S.W.3d at 417. Although we are authorized to disagree with the jury's determination, even if probative evidence exists that supports the verdict, *see Clewis*, 922 S.W.2d at 133, our evaluation should not substantially intrude upon the jury's role as the judge of the weight and credibility of witness testimony. *Santellan*, 939 S.W.2d at 164. A jury is in the best position to evaluate the credibility of witnesses, and we are required to afford "due deference" to the jury's determination. *Marshall v. State*, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006). A successful challenge to the factual sufficiency of the evidence will result in a reversal of the conviction and remand of the case for a new trial. *See Watson*, 210 S.W.3d at 414.

Count V of the indictment alleged that Appellant "did then and there intentionally or knowingly cause the penetration of the sexual organ of [L.S.], a child who was then and there younger than 17 years of age and not the spouse of the defendant, by the defendant's sexual organ." Count VI alleged that Appellant "did then and there intentionally or knowingly cause the penetration of the sexual organ of [L.S.], a child who was then and there younger than 17 years of age and not the spouse of the defendant, by the defendant's finger." *See* TEX. PENAL CODE ANN. § 22.011(a)(2)(A) (Vernon Supp. 2008).

4

**Application**

Appellant argues that the evidence is factually insufficient because his DNA was not found during the physical examination of the complaining witness. Citing *Trevino v. State*, 991 S.W.2d 849, 852 (Tex. Crim. App. 1999) and *Johnson v. State*, 183 S.W.3d 515, 520 (Tex. Crim. App. 2006), Appellant argues that the absence of his DNA is inconsistent with the verdict and that the verdict is clearly wrong. We disagree.

In *Trevino*, the court held that the presence of the appellant's blood on the victim's panties and fibers from his pants on the victim's clothes tended to connect him to the crime, which was a sexual assault and murder. *Trevino*, 991 S.W.2d at 852. The issue in that case was corroboration of accomplice testimony. But the holding was simply a logical conclusion—absent another explanation, a person's blood being found on the panties of a person who has been sexually assaulted and killed strongly suggests that the person may have had something to do with the crime. The converse of that–the absence of an assailant's DNA means the person did not commit the offense–is not always the case. It is true that the absence of DNA evidence linking Appellant to the complaining witness does not enhance the State's case. But it does not diminish the State's proof in the context of this case. The complaining witness testified that Appellant sexually assaulted her. And an expert witness testified that DNA evidence is not recovered from every sexual assault. Finally, there is no evidence that suggests the assault Appellant perpetrated with his finger would have left DNA evidence.

Appellant's reliance on *Johnson* is similarly misplaced. In that case, there was DNA from another person on the victim's undergarments. *Johnson*, 183 S.W.3d at 519. Although it termed the evidence exculpatory, the court denied postconviction relief because there were plausible explanations, other than the petitioner's innocence, for the presence of another person's DNA on the undergarments. *Id.* at 520–21. And so it is here. Had it been found, DNA evidence could have provided a stronger link in this case. But the state of the forensic evidence does not discount or even cast doubt on the complaining witness's version of events. Jeremiah's DNA was present because he had intercourse with the child. Appellant's DNA was not present. There was expert testimony that such evidence is not always recovered in cases of sexual assault, and the assault as described does not compel the conclusion that Appellant's DNA would necessarily be present. This was not

5

a case of an unknown assailant identified by DNA recovered from the victim.

Furthermore, there was substantial evidence to support the verdict. The complaining witness testified that Appellant sexually assaulted her as described in the indictment. A SANE nurse's examination revealed corroborating evidence in terms of injury to the girl that was consistent with a sexual assault. And Jeremiah's near contemporaneous report of the assault and his testimony about what he heard outside the home both corroborate the victim's testimony.

To the extent L.S.'s account of the assault lacked corroborative DNA evidence, this was an issue for the jury to weigh and consider. The jury's resolution of this issue was reasonable and the verdict is not clearly wrong or manifestly unjust. We hold that the evidence is factually sufficient to sustain the verdict. We overrule Appellant's sole issue.

## DISPOSITION

Having overruled Appellant's sole issue, we ***affirm*** the judgment of the trial court.

SAM GRIFFITH

Justice

Opinion delivered December 23, 2008.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(DO NOT PUBLISH)

6