# NO. 12-09-00443-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *JESSE L. MILLIRON,* *APPELLANT* | § | *APPEAL FROM THE 173RD* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *HENDERSON COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Jesse L. Milliron appeals his conviction for possession of certain chemicals with the intent to manufacture a controlled substance. In two issues, Appellant argues that the evidence is legally and factually insufficient to support his conviction. We affirm.

### BACKGROUND

Police officers in Henderson County served a search warrant at a home in the Cherokee Shores Subdivision after receiving information that there were controlled substances at that location. Three people were at the home when the police served the warrant. Inside the home, the police found items that caused them to conclude that someone had been manufacturing methamphetamines at that location. Specifically, they found a used syringe, a propane style tank and an oxygen style tank, both of which contained anhydrous ammonia, a glass pipe, a coffee filter with drug residue in it, acetone, Coleman fuel, a gas mask, methamphetamines, and several boxes of the over the counter medication Sudafed.[1] The Sudafed boxes and the two tanks were

---

[1] One of the boxes of Sudafed appeared to still contain medicine in it. Officers found three or four empty Sudafed boxes in the trash.

found inside a bedroom that was padlocked shut. In that same bedroom, the police also found a bottle of prescription medication with Appellant's name on it and a box of his business cards.

Appellant was not present when the police served the warrant. However, Mikel Kirkpatrick, the homeowner, gave a statement implicating Appellant in the possession of the anhydrous ammonia, and the police filed charges against him and obtained a warrant for his arrest. A Henderson County grand jury indicted Appellant for the felony offense of possession of certain chemicals with the intent to manufacture a controlled substance.[2] Specifically, the grand jury alleged that he possessed the anhydrous ammonia and the Sudafed tablets, which it alleged were an immediate precursor to methamphetamine, with the intent to manufacture a controlled substance. The grand jury also alleged that Appellant had twice before been convicted of felony offenses, that one of those convictions was final before the commission of the other offense, and that both convictions were final before the commission of this offense.

Appellant pleaded not guilty, and a trial was held. Testifying at Appellant's trial, Kirkpatrick disavowed his previous statement that Appellant had possessed the anhydrous ammonia. Instead, he testified that he did not know who the tanks belonged to and that, while he had seen Appellant conducting some stages of the process for manufacturing methamphetamine, he had not seen him use any anhydrous ammonia. Kirkpatrick also testified that Appellant was rarely at the house and only visited the home for short periods of time.

One of the other persons present when the warrant was executed testified that Appellant was a methamphetamine "cook," that he had just brought Appellant lithium batteries–a raw material for manufacturing methamphetamines–a short time before the police arrived, and that the gas tanks belonged to Appellant. Police officers testified about the methamphetamine manufacturing process and that one method of production required anhydrous ammonia and pseudoephedrine, which was present in Sudafed tablets. The jury found Appellant guilty as charged. Appellant pleaded true to the sentencing enhancement allegations, and the trial court assessed a sentence of imprisonment for forty years. This appeal followed.

### SUFFICIENCY OF THE EVIDENCE

In two issues, Appellant argues that the evidence is legally and factually insufficient to

show that he possessed the Sudafed and the anhydrous ammonia.

**Standard of Review**

While this appeal was pending, the Court of Criminal Appeals held that appellate courts were to review the sufficiency of the evidence in a criminal case using only the legal sufficiency standard. *See Brooks v. State*, No. PD-0210-09, 2010 Tex. Crim. App. LEXIS 1240, at *2 (Tex. Crim. App. Oct. 6, 2010) (plurality opinion); 2010 Tex. Crim. App. LEXIS 1240, at *59 (Cochran, J., concurring). Accordingly, we will review Appellant's challenge to the sufficiency of the evidence under the well established standard for legal sufficiency. *See Brooks*, 2010 Tex. Crim. App. LEXIS 1240, at *2 (plurality opinion) ("It bears emphasizing that a rigorous and proper application of the *Jackson v. Virginia* legal-sufficiency standard is as exacting a standard as any factual-sufficiency standard (especially one that is 'barely distinguishable' or indistinguishable from a *Jackson v. Virginia* legal-sufficiency standard).").

The due process guarantee of the Fourteenth Amendment requires that a conviction be supported by legally sufficient evidence. *See Jackson v. Virginia*, 443 U.S. 307, 315-16, 99 S. Ct. 2781, 2786-87, 61 L. Ed. 2d 560 (1979); *Ross v. State*, 133 S.W.3d 618, 620 (Tex. Crim. App. 2004); *Willis v. State*, 192 S.W.3d 585, 592 (Tex. App.–Tyler 2006, pet. ref'd). When reviewing the sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Brooks*, 2010 Tex. Crim. App. LEXIS 1240, at *14 (citing *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789). Under this standard, a reviewing court does not sit as a thirteenth juror and may not substitute its judgment for that of the fact finder by reevaluating the weight and credibility of the evidence. *Id.*, 2010 Tex. Crim. App. LEXIS 1240, at *15; *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). Instead, a reviewing court defers to the fact finder's resolution of conflicting evidence unless that resolution is not rational in light of the burden of proof. *Brooks*, 2010 Tex. Crim. App. LEXIS 1240, at *15-16. The duty of a reviewing court is to ensure that the evidence presented actually supports a conclusion that the defendant committed the crime. *See Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

**Applicable Law**

---

[2] *See* TEX. HEALTH & SAFETY CODE ANN. § 481.124 (Vernon 2010)

As alleged in the indictment, the State was required to prove that Appellant intentionally or knowingly possessed anhydrous ammonia or an "immediate precursor" with intent to manufacture a controlled substance unlawfully. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.124 (Vernon 2010); *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995). An "immediate precursor" is defined by statute as a substance so designated by the Director of the Department of Public Safety. TEX. HEALTH & SAFETY CODE ANN. § 481.002(22) (Vernon 2010). The intent to manufacture a controlled substance unlawfully may be presumed if the actor possesses or transports anhydrous ammonia in a container or receptacle that is not designed and manufactured to lawfully hold or transport anhydrous ammonia. *See id*. § 481.124(b)(1).

Possession means "actual care, custody, control, or management" of an item. TEX. HEALTH & SAFETY CODE ANN. § 481.002(38) (Vernon 2010). The evidence used to prove possession can be either direct or circumstantial. *Brown*, 911 S.W.2d at 747. When proof of possession is circumstantial, the state must establish that the accused's connection to the substance was more than just fortuitous. *Id*. In the past, courts have held that there must be additional independent facts and circumstances that affirmatively link the accused to the contraband when he does not possess it on his person. *See Poindexter v. State*, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005). In *Evans v. State*, 202 S.W.3d 158, 163 (Tex. Crim. App. 2006), the court of criminal appeals restated the proper method to analyze the sufficiency of the evidence in cases where possession of an item is illegal. The court acknowledged what had been called an "affirmative links" test, but held that circumstantial evidence of possession could be sufficient evidence to connect a defendant to the actual care, custody, control or management of contraband when the "logical force of the circumstantial evidence, not the number of links" supported the jury's verdict. *Id*. at 163 n.12, 166. In that case, the court noted that the jury had already engaged in a weight of evidence determination–one which likely included an analysis of links between a defendant and the drugs–and that under "federal and Texas law, juries trump both trial and appellate judges on weight-of-evidence determinations." *Id*. at 164.

**Analysis**

With respect to the legal sufficiency of the evidence, Appellant does not argue that the Sudafed tablets were not an "immediate precursor" or that the evidence did not support the conclusion that whoever possessed the tablets and anhydrous ammonia did so with the intent to

manufacture a controlled substance.  Rather, he argues that the evidence was insufficient to show that he possessed those items.

Specifically, Appellant argues that the circumstantial evidence suggests that he did not possess the items.  For example, Appellant was not present when the items were discovered.  He had no controlled substances on his person, he did not flee, he made no statements, there was no odor of contraband about him, and no items of paraphernalia or contraband were found when he was arrested.  Citing Kirkpatrick's testimony, Appellant argues that the evidence showed that he was rarely at the home and that no evidence showed he controlled the locked room in which the tablets and anhydrous ammonia were found.  Appellant also directs us to evidence that he argues is contrary to the verdict, including evidence that he lived in Irving, Texas, and Kirkpatrick's testimony that the tanks did not belong to Appellant.

As the State points out, there is circumstantial evidence that supports the jury's verdict. Specifically, the presence of Appellant's business cards and his prescription pill bottles in the locked room are consistent with Appellant controlling that room.  And the State had direct evidence that Appellant possessed the anhydrous ammonia in the tanks.  Steve McArter, the other man present when the police served the search warrant, testified that Appellant moved into the home a month or two before the police served the search warrant.  He testified that Appellant was the only person with a key to the padlocked room in the home, that he had seen Appellant conduct part of the process of manufacturing methamphetamines, and that the two tanks recovered from the locked room belonged to Appellant.  The tanks, one a repurposed oxygen tank, the other a propane style tank, were not designed and manufactured to hold anhydrous ammonia.

While Appellant does not address McArter's testimony in his appellate brief, Appellant's attorney asserted at trial that the tanks could have belonged to McArter and that he, therefore, had a motive to shift the blame to Appellant.  McArter, in response to counsel's questioning him about his ability to manufacture methamphetamine, testified that "[c]an't no [sic] idiot make methamphetamine.  You have to be very intelligent."  As with the rest of his testimony, this statement contains both direct and indirect assertions that the jury was well equipped to evaluate. With only the cold appellate record to review, it is appropriate that this court defer to the jury's assessment of the weight to be given to McArter's testimony.

Ultimately, it was for the jury not only to assess the weight of McArter's testimony but to determine how to incorporate all of the testimony and the physical evidence. *See*, *e.g.*, ***Fuentes v. State***, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999) ("[T]he jury, as the trier of fact, is the sole judge of the credibility of the witnesses and of the strength of the evidence."). The jury credited McArter's testimony but did not accept Kirkpatrick's implied assertion that Appellant did not possess the tanks. We must give great deference to jury determinations concerning the weight of the evidence and the credibility of the witnesses. *See **Johnson v. State***, 23 S.W.3d 1, 14 (Tex. Crim. App. 2000).

The State's case rested, in large part, on McArter's testimony that Appellant possessed the tanks. The police found the anhydrous ammonia in unapproved tanks amid copious other evidence of the manufacture of methamphetamines in a locked room that also contained Appellant's personal possessions. After reviewing all of the evidence, we conclude that a rational jury could conclude, beyond a reasonable doubt, that Appellant exercised care, control, and custody of the two tanks of anhydrous ammonia. In light of the other evidence in the home and the testimony about the manufacture of methamphetamines, the jury could also conclude that he possessed the Sudafed tablets. We overrule Appellant's first and second issues.

## DISPOSITION

Having overruled Appellant's first and second issues, we ***affirm*** the judgment of the trial court.

                                  **SAM GRIFFITH**
                                       Justice

Opinion delivered November 3, 2010.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(DO NOT PUBLISH)