# NO. 12-12-00396-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *DAPHNE DAKEISHA AUSBORNE,*<br>*APPELLANT* | § | *APPEAL FROM THE 241ST* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *SMITH COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

A jury convicted Appellant, Daphne Dakeisha Ausborne, of possession of a controlled substance with intent to deliver and assessed her punishment at imprisonment for eighty-five years. Appellant challenges the sufficiency of the evidence to support her conviction, the court costs assessed, and the restitution ordered. We modify the judgment and affirm as modified.

### BACKGROUND

Tyler narcotics officers received reports that Mike Howard, a notorious crack cocaine dealer, had moved his business to 1307 West Queen Street in Tyler, Texas. Ten days of surveillance confirmed the report. Before the day of the raid, confidential informants bought crack cocaine from "Mike' on two occasions with bills that had been photocopied. A search warrant was obtained. Prior to the execution of the warrant, a SWAT team and Tyler narcotics officers kept the house under close observation for approximately fifty minutes before entering the house at 7:21 p.m.

Upon entry, the SWAT team found Terrence Jackson seated in the living room seven feet from the front door. A loaded .22 caliber pistol was discovered between the cushion and arm rest of his chair. A digital scale was at his feet. Mike Howard was in the kitchen. Patricia

Daniel was in the west bedroom. An unloaded .22 rifle, a partially smoked marijuana blunt, a tray with cocaine residue, and a crack pipe were also in the west bedroom.

Office Harrington of the SWAT team found Appellant coming out of a closet in the east bedroom. She was obviously pregnant and extremely excited. Within less than a minute, the SWAT team had handcuffed all four occupants and removed them from the house.

In the east bedroom where Appellant had been discovered, the narcotics officers found a partially open plastic jar containing thirty-two rocks of crack cocaine. Appellant's purse containing $200.00 in ten and twenty dollar bills was located within a foot of the cocaine. A loaded .22 caliber pistol lay nearby under a sheet. Patricia Daniel's purse was also on the bed.

A black backpack of unknown ownership lay on the floor against the wall of the bedroom. Inside the backpack was a .25 caliber automatic pistol, a notebook, and index cards with entries related to drug sales. Also against the wall was a maroon basket containing a spiral notebook and some .38 caliber ammunition. Women's clothing was also scattered about the room.

The police arrested Michael Howard and Appellant for possession of a controlled substance with intent to deliver. Patricia Daniel was arrested on outstanding traffic warrants. Terrence Jackson was released.

Terrence Jackson was presumed to be the father of Appellant's child. Most of the messages on Jackson's cell phone appeared related to drug traffic. Although none of the cell phone messages were related to Appellant, a cell phone picture of Appellant at the front door of 1307 West Queen Street was retrieved from Jackson's cell phone.

The officers found no narcotics on Appellant's person. Her fingerprints were not on the plastic jar containing the crack or on any of the weapons found inside the house. The confidential informants who bought crack from "Mike' reported no contact with Appellant or any other female while in the house. None of the transactions recorded in the ledgers and index cards were shown to be related to Appellant or in her handwriting. No utility bills or other documents linked Appellant to the 1307 West Queen Street address.

## POSSESSION

In her first issue, Appellant contends the evidence is legally insufficient to prove that she possessed the alleged contraband.

In determining a challenge to the legal sufficiency of the evidence, the reviewing court must consider all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979); *Brooks v. State*, 323 S.W.3d 893, 894-95 (Tex. Crim. App. 2010).

## Standard of Review and Applicable Law

To prove unlawful possession of a controlled substance, the state must prove that (1) the defendant exercised control, management, or care over the substance, and (2) the defendant knew the substance possessed was contraband. *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005).

Mere presence at the location where drugs are found does not establish care, custody, or control of those drugs. *Evans v. State*, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006). However, presence or proximity, when supplemented by other evidence, either direct or circumstantial, may be sufficient to establish that element beyond a reasonable doubt. *Id*. Texas courts have recognized many circumstances that serve, singly or in combination, to connect a defendant to the contraband. *See e.g., id*. at 162 n.12; *Willis v. State*, 192 S.W.3d 585, 593 (Tex. App.–Tyler 2006, pet. ref'd). The critical issue is whether there is evidence of circumstances, in addition to mere presence, that would adequately justify the conclusion that the defendant knowingly possessed the substance. *Evans*, 202 S.W.3d at 166.

## Discussion

Appellant argues that the circumstances connecting her to the crack cocaine were "minimal." Although her purse was found close to the closed plastic jar containing the cocaine, the purse of another female occupant of the house was also found close to the contraband. The women's clothing found in the bedroom with the drugs was not shown to belong to Appellant.

Appellant argues that there was no fingerprint evidence connecting her to the container of crack cocaine or the .22 caliber pistol also found nearby. The police found no drugs or drug paraphernalia on her person. None of the modest amount of money she had could be traced to money known to have been exchanged for drugs. There was no proof that the entries in the various drug ledgers had been made by her or were related to her. The drug related text messages retrieved from the cell phones found in the house had no apparent connection to Appellant.

Overlooked by Appellant were other circumstances that, when considered together with her presence, justify the inference that Appellant's connection to the cocaine was more than "just fortuitous." When the officers entered the house, she was the sole occupant of the room where all the crack was found. The container of cocaine was on the side of the bed nearest the closet and easily accessible to her. Her purse was within twelve inches of the cocaine. Appellant was apprehended in a working crack house where she had spent nearly an hour before the police raid. A loaded .22 caliber revolver lay on the bed under a sheet close to her purse and the cocaine and was within her reach. Appellant had approximately $200.00 in her purse when she was arrested. Most of the cash was in twenty dollar bills. Twenty dollars was the typical price paid for crack rocks like those found in the house. Appellant's conduct indicated consciousness of guilt. She was extremely agitated when arrested. She continued yelling and moving about although ordered to "stand still." Appellant appeared "high' when arrested indicating use of the drugs. She had a close relationship with Terrence Jackson, who, his cell phone messages show, was taking orders for drugs until the time of the police raid.

We conclude that the logical force of the direct and circumstantial evidence in this case is sufficient to establish beyond a reasonable doubt that Appellant knowingly possessed the crack cocaine. Appellant's first issue is overruled.

## COURT COSTS

In her second issue, Appellant maintains the trial court erred in imposing court costs not supported by a statutorily required bill of costs.

### Applicable Law

A judgment of conviction "shall also adjudge the costs against the defendant, and order the collection thereof as in other cases." TEX. CODE CRIM. PROC. ANN. art. 42.16 (West 2006).

"A cost is not payable by the person charged with the cost until a written bill is produced or is ready to be produced, containing the items of cost, signed by the officer who charged the cost or the officer who is entitled to receive payment of the cost." TEX. CODE CRIM. PROC. ANN. art. 103.001 (West 2006). When a trial court's assessment of costs is challenged on appeal and no bill of costs is in the record, it is appropriate to supplement the record pursuant to Rule 34.5(c) because a bill of costs is required by Article 103.006. *Ballinger v. State*, No. 12-12-

4

00280-CR, 2013 WL 3054935, at *1 (Tex. App.–Tyler June 19, 2013, no pet.) (not yet released for publication).

In the instant case, the judgment reflects assessed costs of 344.00. The bill of costs filed as a supplement to the clerk's record listed costs of $644.00. The order to withdraw funds authorizes the withdrawal of $644.00 from Appellant's trust account. The bill of costs includes $300.00 in attorney's fees not included in the judgment but included in the order to withdraw funds.

The costs assessed against Appellant, other than the attorney's fees, are appropriate and authorized by statute.

The State concedes that the assessment of $300.00 in attorney's fees is not supported by the finding required by Texas Code of Criminal Procedure Article 26.05. The trial court had previously determined that Appellant was indigent. She is presumed to remain indigent for the remainder of the proceedings unless a material change in her circumstances occurs. TEX. CODE CRIM. PROC. ANN. art. 26.04 (West 2009). Where the record does not contain a determination by the trial court that Appellant's financial circumstances have materially changed or a finding that Appellant had the financial resources to pay the assessed attorney fee, this court may modify the judgment and withdrawal order, deleting the assessment of $300.00 in attorney's fees as court costs. *See* **Mayer v. State**, 274 S.W.3d 898, 901-02 (Tex. App.–Amarillo 2008), *aff'd*, 309 S.W.3d 552 (Tex. Crim. App. 2010). Appellant's second issue is sustained in part.

## RESTITUTION

In her third issue, Appellant complains the trial court erred in ordering her to pay $140.00 to the Texas Department of Public Safety. Appellant contends (1) there is no statutory authority for restitution to the DPS when the defendant is sentenced to imprisonment, and (2) there is no evidence in the record to support the imposition of restitution.

To preserve her complaint that the trial court lacked statutory authority, Appellant was required to make a timely request, objection, or motion with sufficient specificity to apprise the trial court of her complaint. TEX. R. APP. P. 33.1(a); **Idowu v. State**, 73 S.W.3d 918, 921 (Tex. 2002) ("If a defendant wishes to complain about the appropriateness of (as opposed to the factual basis for) a trial court's restitution order, [s]he must do so in the trial court, and [s]he must do so

5

explicitly."). By failing to object to the trial court's order of restitution to the DPS, Appellant failed to preserve error as to that portion of her complaint. *Id*.

In her third issue, Appellant also contends the trial court's reimbursement order is not supported by sufficient evidence. A complaint regarding the sufficiency of the evidence may be urged for the first time on appeal. *Mayer v. State*, 309 S.W.3d 552, 555-56 (Tex. Crim. App. 2010). An order of restitution must be supported by sufficient evidence. *Cartwright v. State*, 605 S.W.2d 287, 289 (Tex. Crim. App. 1980). Here, the trial court's order requiring restitution in the amount of $140.00 to DPS has no support in the record. The State concedes the error and also requests that the judgment and Attachment A be modified to delete the $140.00 payable to DPS as restitution. Appellant's third issue is sustained.

## DISPOSITION

We have sustained Appellant's second issue in part and her third issue. Accordingly, we *modify* Attachment A to delete the assessment of $644.00 in court costs and to state that the total amount of "court costs, fees and/or fines and/or restitution" is $344.00. We also *modify* the judgment to delete the order that Appellant pay the DPS $140.00 as restitution. In all other respects, the judgment is *affirmed*.

**BILL BASS**
Justice

Opinion delivered September 4, 2013.
*Panel consisted of Worthen, C.J., Hoyle, J., and Bass, Retired J., Twelfth Court of Appeals, sitting by assignment*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

SEPTEMBER 4, 2013

NO. 12-12-00396-CR

**DAPHNE DAKEISHA AUSBORNE,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 241st District Court

of Smith County, Texas (Tr.Ct.No. 241-1044-12)

THIS CAUSE came on to be heard on the appellate record and the briefs filed herein; and the same being inspected, it is the opinion of the Court that the trial court's judgment below should be **modified and, as modified, affirmed**.

It is therefore ORDERED, ADJUDGED and DECREED that Attachment A to the trial court's judgment be **modified** to state that the total "court costs, fees and/or fines and/or restitution" is $344.00; that the trial court's judgment be **modified** to delete the order that Appellant pay the DPS $140.00; that **as modified**, the trial court's judgment is **affirmed**; and that this decision be certified to the trial court below for observance.

Bill Bass, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Bass, Retired J., Twelfth Court of Appeals, sitting by assignment.*